IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULISSA GREEN, on behalf of her minor child, DANASHA MCCORY, and as next friend of her minor grandchild, BAYLIE BELL, ) ) ) ) Plaintiffs, ) ) v. ) ) THE CITY OF CHICAGO, *et al.* ) ) Defendants. ) ) ) | Case No. 22-CV-02918 Hon. Andrea R. Wood, District Judge Hon. Heather K. McShain, Magistrate Judge Jury Trial Demanded |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION
TO BIFURCATE *MONELL* CLAIMS**

*Plaintiffs' Attorneys*
Al Hofeld, Jr.
Zachary J. Hofeld
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle St., Suite 3120
Chicago, IL 60602
(773) 241-5844
al@alhofeldlaw.com
zach@alhofeldlaw.com

**INTRODUCTION & SUMMARY**

On September 29, 2015, Minor Plaintiffs Danasha McCory and Baylie Bell, then just eight and one years old, respectively, were held at gunpoint by multiple Defendant Chicago Police Officers, not on accident or at a distance or for just a millisecond, but intentionally, at close range, and for extended periods of time as Officers executed a search warrant at their home. Dkt. 33, ¶¶ 2-5, 67, 71. The two-hour search was not only fruitless but unlawful: probable cause was predicated solely on the false tip of a "John Doe" informant of unknown reliability, which Officers knowingly failed to independently verify and instead just accepted as true. *Id.* ¶¶ 45-53, 162-76. And the force deployed by Officers was excessive, unreasonable, and unnecessary: at all times it was clear to Officers that Minor Plaintiffs posed no threat to them and were complying fully with their commands. *Id.* ¶¶ 45, 91-93. As a result of Officers' reckless policing and excessive force, Minor Plaintiffs now suffer long-lasting psychological injuries. *Id.* ¶¶ 95-110.

Those injuries would not have happened but for the City's policies and practices. *Id.* ¶¶ 115-56. Although those policies and practices were publicly addressed in 2016 and 2017, when separate year-long investigations into the Chicago Police Department (CPD) by the United States Department of Justice (DOJ) and the City's own Police Accountability Task Force (PATF) found CPD had an unconstitutional pattern or practice of using excessive force against children,[1] that pattern or practice had been well known to the City for decades. *Id.* ¶¶ 19-32. The City simply chose to do nothing about it. *Id.* Even now, in the wake of DOJ's and PATF's public findings, CPD has implemented zero

---

[1] DOJ concluded in its 2017 report that CPD had a pattern or practice of using "excessive less-lethal force against children." U.S. DEP'T OF JUSTICE, INVESTIGATION OF THE CHI. POLICE DEP'T 34 (2017), https://www.justice.gov/opa/file/925846/download [hereinafter DOJ Report]. Likewise, PATF concluded in its 2016 report that "[t]he existing relationship between CPD and youth—particularly youth of color—can be described as antagonistic, to say the least"; that youth are "being mistreated by those who have sworn to protect and serve them"; and that "[m]ost CPD officers are not adequately trained or equipped to interact with youth." POLICE ACCOUNTABILITY TASK FORCE, RECOMMENDATIONS FOR REFORM: RESTORING TRUST BETWEEN THE CHI. POLICE AND THE COMMUNITIES THEY SERVE 54-55 (2016), https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf [hereinafter PATF Report]).

reforms specifically targeting—let alone remedying—CPD's practice of excessive force against children. *Id.*

Seeking redress for their injuries and to hold the City to account, Minor Plaintiffs, through Plaintiff, Julissa Green, brough this lawsuit.[2] Dkt. 1. In Count I, Minor Plaintiffs bring a *Monell* claim against the City, alleging, among other things, that they were subjected to excessive force by Officers as a result of the City's: (1) practice of using excessive force against children; (2) lack of policy governing when it is appropriate for officers to point guns at children; (3) failure to investigate and discipline officers for use of excessive force against or in the presence of children; and (4) lack of policy and training instructing officers not to point guns at or use excessive force against or in the presence of children. Dkt. 33, ¶¶ 116-117.[3] In Counts II through X, Minor Plaintiffs bring constitutional claims against the Officers for excessive force, invalid warrant, unlawful / unreasonable search, false arrest, and unconstitutional seizure of property, as well as state law claims for assault, false arrest, intentional infliction of emotional distress, and trespass. *Id.* ¶¶ 157-230. In Counts XI and XII, Minor Plaintiffs bring *respondeat superior* and indemnification claims against the City. *Id.* ¶¶ 231-36.

The City has filed a form motion, asking the Court to exercise its discretion to bifurcate and stay Minor Plaintiffs' *Monell* claims, a form of relief highly disfavored in this District. But this Court should not allow the City to sit out a case that concerns such a deeply troubling pattern in CPD—namely, officers' systematic practice of deploying excessive force against children of color. If *Monell*

---

[2] Plaintiff is Danasha's mother and Baylie's grandmother. Dkt. 33, ¶ 13.
[3] A far cry from the type of nebulous, ill-defined *Monell* claims courts have previously criticized (i.e., practice of racist conduct towards citizens), Minor Plaintiffs' *Monell* theories are narrowly drawn, focusing squarely on the concrete problem of officer excessive force against children, particularly in the context of residential-search-warrant execution. Dkt. 33, ¶¶ 115-56. For instance, the claim focuses prominently on the absence of CPD policy, supervision, and training requiring officers to take steps to avoid the unnecessary use of excessive force against and in the presence of children. *Id.* ¶¶ 122-126a-f. The failure-to-investigate-and-discipline theory is likewise limited to instances of excessive force against children. *Id.* ¶ 118-21.

2

discovery is not permitted in a case like this, it is difficult to imagine when such discovery would ever be appropriate. Bifurcation should be denied for at least six reasons.

First, the City overstates the burden of *Monell* discovery in this case. The City has already produced most of the *Monell* evidence needed for this case as a result of Plaintiffs' counsel's litigation of identical *Monell* claims in analogous cases with overlapping *Monell* periods. That means *Monell* discovery from those cases can and should be used in this one, reducing any burden on the City. (Defendants cite these other cases as indication that *Monell* discovery in this case will be burdensome; in reality, it is the reason why it will be limited).

Second, Defendants' proposed bifurcation blatantly ignores the serious risk of monstruous inefficiency that would result if Minor Plaintiffs were to prevail in the first trial against the Officers or even lose on qualified immunity grounds, thereby requiring a second round of discovery and trial on the *Monell* claim. That second round would require a significant portion of the same witnesses in this case to sit for a second deposition and testify a second time at trial. This would significantly increase the time needed to litigate this case; place a significant additional burden on the Court, the parties, and the witnesses; and substantially increase the cost of this litigation. Risk of such inefficiency is especially unwarranted here, where the burden of *Monell* discovery is so limited.

Third, contrary to the City's contention, there is little conceivable prejudice to any Defendant if the *Monell* claim is tried at the same time as the individual claims, and to the extent any such prejudice exists it can be cured through both pretrial motions *in limine* and limiting instructions during trial.

Fourth, the City's position cannot be adopted because it violates the Seventh Amendment. The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against the Officers, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial against the City. But two trials will necessarily require two separate juries to consider many of the same factual issues. The Seventh Amendment forbids that approach.

Fifth, the City's proposed "Limited Consent to Entry of Judgment," under which it would deny liability but accept judgment against it if Minor Plaintiffs first establish liability against the Officers, is procedurally improper, cannot be used to eliminate *Monell* claims, and should be ignored.

Last but not least, there are significant policy reasons to allow Minor Plaintiffs' *Monell* claims to proceed. For one, accepting Defendants' proposed bifurcation and Limited Consent to Entry of Judgment would effectively insulate the City from ever facing a merits determination on the *Monell* claim. That would fly in the face of section 1983, *Monell*, and *Owen v. City of Independence*, 445 U.S. 622 (1980). By prosecuting their *Monell* claim, Minor Plaintiffs hope to provoke meaningful reform of the CPD practices that caused their psychological trauma. That CPD is presently subject the Consent Decree in *State of Illinois v. City of Chicago*, 17 CV 6260, does not render their *Monell* claims meaningless. After all, the reform they seek may help to ensure that other innocent children in the future do not needlessly suffer the same trauma.

For all the reasons set forth in this response, this Court should exercise its discretion to deny bifurcation. Unitary discovery and trial of all claims in this case can be completed in a timely fashion, especially given that most of the *Monell* evidence has already been gathered in analogous litigation on this same *Monell* claim. As such, bifurcating discovery and trial of Minor Plaintiffs' policy claim—because relatively little *Monell* discovery is needed, and because of the way a second round of discovery and trial would skyrocket the time and cost of this litigation (an extreme prejudice to Plaintiffs) and inconvenience the parties and witnesses—would make no sense.

## DISCUSSION

This Court has discretion to decide certain claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *see also Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). It has similar discretion to stay discovery on claims, but "only for the most obviously compelling reasons." FED. R. CIV. P. 26(b), (d), Advisory Comments to 1970

4

amendment; *Warren v. Dart*, No. 09-cv-3512, 2012 WL 1866372, at *2-3 (N.D. Ill. May 22, 2012). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).

Bifurcation is the exception, not the rule, and it should not be ordered unless "clearly necessary." *Ebony Tate v. City of Chi.*, No. 18 CV 07439, 2019 WL 2173802, at *3 (N.D. Ill. May 20, 2019); *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* FED. R. CIV. P. 42, Advisory Comments ("[S]eparation of issues for trial is not to be routinely ordered."); 7 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2388 (2016) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."); *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012) ("The Court has looked at every decision in this District involving bifurcation of *Monell* claims . . . . It is clear that the weight of authority holds that bifurcation is now heavily disfavored."). In considering bifurcation, the Court "should remain mindful of the traditional role of the factfinder; *i.e.*, to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620. The City justification for bifurcation fails.

### I. Judicial Economy Weighs Heavily Against Bifurcation Because the City Has Already Produced Most of the *Monell* Discovery Needed In This Case.

Defendants expend considerable energy arguing that *Monell* discovery in this case will necessarily be complicated, complex, burdensome, and time-consuming. Mot. at 3-9. Defendants grossly overstate the burden of *Monell* discovery in this case. This is one of a dozen or more cases in this District that have involved *virtually the same Monell claim against the City* arising from similar facts—namely, allegations that Chicago Police officers deployed excessive force against children of color while executing a residential search warrant.[4] Importantly, the City both has completed and is

---

[4] *Compare* Am. Compl., Dkt. 33, ¶¶ 115-56 *with Mendez v. City of Chi.*, No. 18-cv-05560, Fourth Am. Compl., Dkt. 125, ¶¶ 113-37, *and Ebony Tate v. City of Chi.*, No. 18-cv-07439, Third Am. Compl., Dkt. 70, ¶¶

5

completing discovery on this very *Monell* in multiple cases: *Mendez*, where *Monell* discovery is complete and summary judgment motions are pending, *see, e.g.*, 1:18-cv-05560, Dkt. 426 ("all discovery is now closed"); *Ebony Tate*, where *Monell* discovery is nearly complete, *see, e.g.*, 1:18-cv-07439, Dkt. 345 (reopening discovery for the limited purpose of allowing plaintiffs to depose one COPA investigator and the City to produce additional complaint register data); *Vale*, where *Monell* disocvery recently began after Judge Pacold denied bifurcation, No. 20 CV 5037, Dkt. 104, attached hereto as Exhibit A ("the Court . . . finds that bifurcating Plaintiffs['] *Monell* claims will not meaningfully expedite or economize this case" because the City is conducting analogous *Monell* discovery); *Lyons*, where a motion to bifurcate is pending; and *Blassingame*, where a motion to bifurcate is also pending.[5] As the exhibit lists to the *Mendez* summary judgment filings show, that *Monell* discovery was exhaustive, including production of numerous Rule 30(b)(6) witnesses, written policies, training records, complaint register excessive force data, and other *Monell* materials. *See* Exhibit Index to Defendant City's LR 56.1 Statement of Material Facts In Support of its Motion For Summary Judgment, attached hereto as Exhibit B (identifying roughly 25 *Monell*-related exhibits); Exhibit List to Plaintiffs' Summary Judgment Response, attached hereto as Exhibit C (identifying more than 50 *Monell*-related exhibits); Exhibit Index to Defendants' Response to Plaintiffs' LR 56.1(b) Statement of Additional Facts, attached hereto as Exhibit D (identifying some 18 additional *Monell*-related exhibits); Exhibit List to Plaintiffs' Summary Judgment Surreply, attached hereto as Exhibit E (identifying 5 more *Monell*-related

---

170-94, *and Archie v. City of Chi.*, No. 19-cv-04838, Fourth Am. Compl., Dkt. 189, ¶¶ 154-81, *and Blassingame v. City of Chi.*, No. 19-cv-07287, Second Am. Compl., Dkt. 67, ¶¶ 127-65, *and Lyons v. City of Chi.*, No. 20-cv-03412, Am. Compl., Dkt. 27, ¶¶ 103-34, *and Smith v. City of Chi.*, No. 21-cv-00890, Am. Compl., Dkt. 28, ¶¶ 111-52, *and James v. City of Chi.*, No. 21-cv-6750, Am. Compl., Dkt. 45, ¶¶ 96-126, *and Vale v. City of Chi.*, No. 20-cv-5037, Am. Compl., Dkt. 37, ¶¶ 158-90. The *Monell* claim here is also analogous to those in several recently-settled cases, including, but not limited to, *Toni Tate v. City of Chicago*, No. 19-cv-07506, Third Am. Compl., Dkt. 134, ¶¶ 129-61, *Bures v. City of Chicago*, No. 19-cv-02040, Dkt. 65, ¶¶ 117-45, and *Simmons v. City of Chicago*, No. 14-cv-09042, Dkt. 1, ¶¶ 44-55, 61.

[5] The pending motion in *Blassingame* is particularly noteworthy. Because *Blassingame* arises from a 2015 incident, as does this case, it shares the same *Monell* period as this case. Thus, if *Monell* discovery proceeds in *Blassingame*, it can and should be consolidated with the *Monell* discovery here, further dividing the City's *Monell* burden across multiple cases.

exhibits). There is utterly no reason the extensive *Monell* evidence produced in *Mendez* and *Ebony Tate* (2012 to 2019, collectively), which covers about half of the *Monell* period here (2009 to 2015), cannot be used here, reducing any burden on the City.[6]

As to the period of 2009 to 2011, the City completed full discovery on a broader-yet-analogous *Monell* claim in *Simmons v. City of Chicago*, No. 14-cv-09042, Dkt. 221 (noting that all "[d]iscovery" including *Monell* discovery "has been completed" and discussing trial dates), a case likewise involving allegations of officer excessive force against a black child, which settled on the eve of trial.[7] Importantly, although the *Monell* claim there was broader in scope than the one here, *Monell* discovery touched on many of the same issues at play here. *See, e.g.*, *Simmons*, No. 14-cv-09042, Dkt. 223-3, Ex. C to Plaintiffs' Response In Opposition to Defendants' Joint Renewed Motion to Bifurcate Trial, Report of Plaintiffs' Expert Economist, attached hereto as Exhibit G, at 7-9 (summarizing the *Monell* data requested by Plaintiffs and produced by the City in discovery, and showing that the data produced covered 1/1/2009 to 11/9/2016); *id.* at 29-30 (underscoring the breadth of *Monell* discovery in categorizing the thousands of complaint register logs produced by the City); *id.* at 1-2 (analyzing various questions including those similar to the ones at issue in this case, such as "the probability that CPD or IPRA would sustain [a misconduct complaint] against a Chicago police officer for . . . excessive force against a minor," "the probability that a CPD officer would be disciplined" in connection with a complaint of excessive force against a minor, "the probability that a police officer

---

[6] Indeed, in *Vale*, the parties agreed last week to save time an expense by "adopt[ing] and designat[ing] as part of the discovery record . . . all *Monell*-related discovery ([]documents and depositions)" from *Mendez* and *Ebony Tate*, and further agreed that they "need not . . . re-produce this same discovery again during the course of discovery[.]" Email Correspondence Between Counsel in *Vale*, attached hereto as Exhibit F.

[7] Plaintiffs' counsel also represented the minor plaintiffs in *Simmons*. There, Judge Kennelly denied bifurcation at the outset of discovery. No. 14 CV 9042, Dkt. 66 (City's "[m]otion to bifurcate is denied for reasons stated in open court."). Following the completion of *Monell* discovery, the City renewed its motion, which Judge Kennelly granted but ordered that plaintiffs' *Monell* claims be tried first. *Id.*, Dkt. 264. Although the *Monell* claim discovered in *Simmons* was broader than the *Monell* claim here, *compare* Am. Compl., Dkt. 33, ¶¶ 115-56 (focusing narrowly on officer excessive force against *children of color*), *with Simmons v. City of Chicago*, No. 14-cv-09042, Complaint, Dkt. 1 ¶¶ 45-47, 50-51, 53 (focusing on officer excessive force against citizens broadly), Minor Plaintiffs here will seek the same complaint register files that were produced in *Simmons*.

would actual receive final discipline for a sustained complaint" of excessive force against a minor, whether "the City, CPD, BIA and IPRA sustain complaints against and discipline officers significantly less often where the complainant was African-American," and whether the data obtained during *Monell* discovery shows "evidence of a Code of Silence within CPD and IPRA"). Importantly, because extensive complaint register data spanning 2009 to 2016 was produced in *Simmons*, Plaintiffs estimate that the City may not even need to produce any complaint register data in this case, provided it can attest that the previous production remains complete. Consequently, most of the *Monell* discovery needed in this case—whether written policies, training records, Rule 30(b)(6) witnesses, complaint register files, and other materials—has already been produced in *Simmons*, *Mendez*, and *Ebony Tate*, which collectively cover the *Monell* period here.[8]

Moreover, Defendants' argument that the written discovery and Rule 30(b)(6) deposition testimony needed on the *Monell* claim will be unduly "burdensome" is refuted by the fact that the City agreed without objection to produce most of the *Monell*-related documents and 30(b)(6) witnesses sought in the *Bures*, *Mendez*, and *Ebony Tate*, and as for those few Rule 30(b)(6) topics for which the City sought an order of protection on burden grounds, the court denied many of its requests. *See Bures v. City of Chi.*, 1:19-cv-2040, Order on Plaintiffs' Amended Motion to Compel (N.D. Ill. June 14, 2020) (Kennelly, J.), attached hereto as <u>Exhibit H</u> (where City moved for protective order on 7 of 35 Rule 30(b)(6) topics, and court denied City's request as to 3 of those topics); *Mendez*, 1:18-cv-05560, Minute Entry, Dkt. 325 (N.D. Ill. July 7, 2020) (Kim, J.) (same); *Ebony Tate*, Transcript of Proceedings Before

---

[8] Of course, that is not to say that no *Monell* discovery is needed here, such as production of a handful of 30(b)(6) witnesses regarding a few narrow CPD training and policy matters not addressed in *Simmons*, *Mendez*, or *Ebony Tate*, or responding to a few additional document requests. But it is to say that any such discovery will pale in comparison to both the amount of discovery needed on Minor Plaintiffs' individual claims against the Officers and the volume of *Monell* discovery conducted in *Simmons*, *Mendez*, and *Ebony Tate*. And it is to say that, in any event, it is hardly the type of onerous discovery burden that would justify bifurcation.

the Honorable Jeffrey T. Gilbert (May 28, 2021), attached hereto as Exhibit I (overruling most of the City's "burdensome" objections to producing Rule 30(b)(6) witnesses).

Crucially, where, as here, a municipality is currently engaged in—or has already completed—discovery on an identical or similar *Monell* claim in another case, courts in this District generally deny bifurcation wholesale. *See, e.g.*, *Vale*, Exhibit A, at 1 (Pacold, J.); *Maysonet v. Guevara*, No. 18-CV-2342, 2020 WL 3100840, at *3 (N.D. Ill. June 11, 2020) (declining to bifurcate *Monell* claim because burden of *Monell* discovery was mitigated by fact *Monell* discovery had or would be produced in other cases involving similar group of CPD officers); *Rodriguez v. City of Chi.*, No. 18-cv-7951, 2019 WL 4278501, at *2 (N.D. Ill. Sep. 10, 2019) (declining to bifurcate *Monell* claim because case was one of several alleging "same" *Monell* claim "currently being litigated in several courts in the Northern District of Illinois," such that "much of the discovery on *Monell* liability has already been done by the City at least once, and it will not need to expend significant time or resources to complete it"); *Cadle v. City of Chi.*, No. 15 C 4725 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) (declining to bifurcate *Monell* claim, reasoning in relevant part that "[t]he City is very familiar with this type of discovery" and "has produced similar information in other cases," such that "[t]he incremental burden of doing so again here does not militate heavily in favor of bifurcation"); *Bradley v. City of Chi.*, No. 09 C 4538, 2010 WL 432313 (N.D. Ill. Feb.3, 2010) (declining to bifurcate *Monell* claim in part because City was already engaged in *Monell* discovery in separate case involving nearly-identical *Monell* claim); *Bell v. City of Chi.*, No. 09 C 4537, 2010 WL 432310, at *4 (N.D. Ill. Feb. 3, 2010) (same, and further explaining that City should "already have much of the necessary discovery for this case," and that "[t]o allow this and other cases to proceed to trial on the individual liability claim only to potentially begin anew with the municipal liability claim would not serve the efficient administration of the judicial system"). This Court's own decisions have acknowledged this principle. *See Batchelor v. City of Chi.*, No. 18-*cv*-08513,

9

2021 WL 825607 (N.D. Ill. Mar. 4, 2021) (Kness, J.) (denying bifurcation on reconsideration in light of fact City was completing *Monell* discovery in closely-related case). The same principle applies here.

## II. Bifurcation Threatens Grave Inefficiency, Duplicative Work, Wasted Resources, and Inconvenience to the Court, the Parties, and Witnesses.

The gaping hole in Defendants' judicial economy argument is that it completely ignores the gross inefficiency that will result should Minor Plaintiffs prevail against the Officers or even lose on qualified immunity grounds. Defendants' proposal would require two separate rounds of discovery—the first to develop the record necessary for the individual claims, and the second to supplement that record with evidence necessary for the *Monell* claim. That would mean two depositions of some or all of the ten Defendant Officers (one to ask them about their role in the individual case, and a second to ask questions relevant to the *Monell* count), months (or likely years) apart. There would be two rounds of written discovery. Two rounds of expert reports and depositions. During each round of discovery there would be motion practice as disputes arose between the parties. *See Bradley*, 2010 WL 432313, at *3 (N.D. Ill. Feb.3, 2010) (denying bifurcation in part because "the need of the parties to separate *Monell* evidence from individual liability evidence will further complicate rather than simplify these proceedings"). After each round of discovery, there would be dispositive motions for the Court to resolve. After that, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions *in limine* (responses and replies), two pretrial orders, and two jury instruction conferences. All of this double work would be avoided entirely if it was done once, in a unified proceeding.

Worse, the City's proposal would require two trials. Plaintiffs would have to call many of the same witntesses twice—once to talk about the facts of the individual case, and a second time to talk about the way the City's polices and practices impacted the individual case. That last point is important. A *Monell* claim requires proof that the policy or practice in question was the moving force behind a constitutional violation. *Thomas*, 604 F.3d at 306. So the second trial on the *Monell* claim will entail a significant amount of evidence admitted in the first trial on the individual claims—namely, evidence

10

about Officers' conduct. *See Houskins*, 549 F.3d at 496 (affirming decision not to sever claims against two defendants because those claims entailed "an overlap in the facts, evidence, and witnesses required"). Also, experts would have to fly to Chicago twice to testify, at great expense to the parities. Many exhibits would be introduced against the Officers and reintroduced against the City in the second trial. There would be two rounds of opening arguments and two rounds of closing arguments. Again, each trial would bring another round of motion practice. In such circumstances, bifurcation makes little sense, as courts in this District have recognized. *Cadiz*, 2007 WL 4293976, at *5 (discussing the problem with assuming bifurcation serves judicial economy); *see also Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4; *Mendez* at 3-5; *Ebony Tate* at 4-5; *Vale*, Exhibit A, at 1.

In sum, bifurcation risks substantially increasing, rather than decreasing, the burden of discovery and trial on the Court, the parties, and witness, and threatens to multiply litigation costs—all without any meaningful offsetting efficiency benefits. This weighs heavily against bifurcation.

## III. Bifurcation Would Not Avoid Any Unfair Prejudice to Defendants, and Any Unfair Prejudice Can be Dealt with Using Limiting Instructions.

Defendants' argument that bifurcation is needed to avoid prejudice to both the City and the Officers, *see* Dkt. 39 at 9-11, is wrongheaded. As a threshold matter, Defendants fail to make any actual showing that a unified trial would cause *unfair* prejudice to any party; instead, Defendants merely offer speculative arguments, quoting generally from caselaw. *Id.* Courts in this District "routinely reject[]" this "[prejudice] argument[.]" *Mendez*, 2020 WL 1479081, at *5; *see also Estate of Loury*, 2017 WL 1425594, at *4 (collecting cases). Moreover, the argument is a red herring: by labeling evidence of City policies and practices as "*Monell* evidence," Defendants imply it is admissible *only* against the City, but that is incorrect. A large portion of the so-called *Monell* evidence is classically admissible against the Officers even if there were no *Monell* claim, and is also relevant to punitive damages. *See, e.g., Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 853 (N.D. Ill. 2000) ("[E]vidence of training that the defendant actually received prior to the events leading up to this case is relevant to the reasonableness of their

11

actions."); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *8 (N.D. Ill. Mar. 31, 2008) (finding CPD general orders could be admissible, and reserving ruling on their admissibility for punitive damages purposes). Likewise, a large portion of evidence of Officers' liability on the individual claims will be admissible against the City on the policy claim and is therefore not unfairly prejudicial at all. Regardless, any attempt now, at this early juncture, to predict how the evidence at trial might prejudice a specific party is wholly speculative and premature, and better performed at close of discovery, when a record exists that can be specifically assessed. *Mendez* at *5.

Even if there were any prejudice to Defendants, that alone would not justify bifurcation. *Ebony Tate*, 2019 WL 2173802, at *4.[9] That is because the well-established mechanism for addressing prejudice concerns under the Federal Rules of Evidence and the decisions of courts in this Circuit are motions *in limine* and limiting instructions. FED. R. EVID. 105 (directing district courts to provide instructions to jury "restrict[ing] the evidence to its proper scope"); *United States v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. 2014) (*en banc*) (limiting instructions sufficiently manage any prejudice caused by admission of other-acts evidence, and "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons"); *Mendez*, 2020 WL 1479081, at *5 (district courts address prejudice concerns through motions *in limine* and limiting instructions); *Ebony Tate* at *4 (district courts address prejudice concerns through limiting instructions). Limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018) (courts assume jurors follow limiting instructions); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to avoid prejudice where it is presumed jury could follow limiting instruction on how to consider evidence); *Awalt*, 2012 WL

---

[9] Indeed, if bifurcation were warranted merely because potential prejudice existed, the number of federal trials would multiply out of control.

1161500, at *13; *Gomez*, 2014 WL 4058963, at *12; *Medina v. City of Chi*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000) ("[t]hough the Court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others"); *Terrell v. Childers*, 1996 WL 385310, at *14 (N.D. Ill. July 3, 1996) (rejecting argument that prejudicial evidence against one defendant would "spill over" onto others because court "will not try the case with the notion that jurors will not faithfully undertake their obligations"). Defendants cannot and have not offered any compelling reason why a limiting instruction would be insufficient to address any potential prejudice to Defendants.

If anything, it is Minor Plaintiffs who may suffer "extreme prejudice" if bifurcation were granted and two trials were needed, as this very Court has recognized. *See DeLeon-Reyes v. Guevara*, No. 18 C 1028, Transcript of Proceedings Before the Honorable Andrea R. Wood, Dkt. 173, attached hereto as Exhibit J, at 11:16-12:7 (although "bifurcation . . . may sound good from some perspectives now," it can "open the door to th[e] possibility of *extreme prejudice* [for plaintiffs] from having to prolong these proceedings for a really long time if there has to be two trials" (emphasis added)); *see also Clipco, Ltd. v. Ignite Design, LLC*, 2005 WL 2861032, at *3 (N.D. Ill. 2005) (bifurcation inappropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice"). If evidence is introduced at trial that is relevant only to claims against the City and is inadmissible and unfairly prejudicial as to the Officers, the proper course of action is to instruct the jury that the evidence is to be considered only for purposes of Minor Plaintiffs' policy claim against the City.[10]

### IV.   Bifurcation Would Violate the Seventh Amendment.

If Minor Plaintiffs prevail on their excessive force claim against the Officers or lose on qualified immunity grounds in the first trial, a second trial on the *Monell* claim would be needed, in

---

[10] Or vice a versa, as the case may be.

front of a separate jury, which would consider some of the same issues decided in the first trial—namely, whether and how Minor Plaintiffs were subjected to excessive force (the first time to assess whether the Officers committed excessive force, and the second to assess whether the City's policies were the cause). The Seventh Amendment prohibits dividing issues in a way that requires a second jury to reexamine an issue decided by the first.[11] The City's proposal would therefore violate the Seventh Amendment as well.

### V. The City's Proposed "Limited Consent to Entry of Judgment" Should Be Ignored.

In an attempt to avoid the problems bifurcation would create, Defendants attach to their motion what they call a "Limited Consent to Entry of Judgment," by which the City promises it would accept a judgment against it if the Officers were found liable or qualifiedly immune. Dkt. 39, at 3, 12-14, Ex. A ¶¶ 4-5). As the Seventh Circuit has observed, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure and is therefore procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not fulfill Plaintiffs' goal of obtaining a judgment against the City to deter future misconduct. *Id.*; *see also Mendez*, 2020 WL 1479081, at *4 (denying bifurcation in part because City's proposed "Limited Consent" "would disclaim liability," thereby "depriv[ing] Plaintiffs of the opportunity to obtain a judgment against the City as a deterrent against future misconduct"). It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Minor Plaintiffs emphatically reject it.[12] *Swanigan*, 775 F.3d

---

[11] *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996); 9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016).

[12] That might be different if the City were proposing to stipulate that it *admits* to having a *de facto* policy and practice during the *Monell* period of allowing its officers to use excessive force against children—but instead, the City's stipulation explicitly disclaims any admission of *Monell* liability. Dkt. 39 at Ex. A ¶ 3 ("the City specifically denies any such constitutional violation was caused by a person with 'final policymaking authority,' denies the City has any 'policies, customs, or practices' that cause constitutional deprivations, denies it has any widespread deficient or unconstitutional practice that is 'so permanent and well-settled as to constitute a custom or usage with the force of law,' denies it has the requisite degree of culpability therefrom, and denies that any

at 959-62. And it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the City's proposed consent should be disregarded entirely.[13] At bottom, Plaintiffs, not the City, are masters of their complaint, *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), and can pursue their claims as desired, even if only for minimal pecuniary award. *Cadiz*, 2007 WL 4293976, at *6.

### VI.   Other Interests Weigh Against Bifurcation.

Defendants argue that Minor Plaintiffs "will not suffer any meaningful prejudice" "if they are not allowed to pursue their *Monell* claim" due to current "media attention" on the issues raised by this case, Plaintiffs' counsel's litigation of similar *Monell* claims, and the ongoing Consent Decree in *State of Illinois v. City of Chicago*, 17 CV 6260. Mot. at 13-14. Not only is that flatly incorrect, but it is also a perverse argument that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims and that the problem Minor Plaintiffs seek to address is currently receiving media attention. Particularly so under a federal statute designed to ensure that there is municipal accountability for violations of civil rights. *Owen v. Independence*, 445 U.S. 622 (1980). Moreover, a *Monell* verdict has significant non-monetary value beyond deterrence of future misconduct: it could

---

alleged 'policy, custom, or practice' of the city directly caused the alleged violations that would give rise to liability under 42 U.S.C. § 1983.").

[13] The City's consent should be ignored on policy grounds as well. Defendants' contention that the "consent" is "no small benefit to Plaintiffs," (Mot. at 12), is as absurd as it is illusory, because it merely "'agree[s] to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway.'" *Gomez v. Guevara*, 18-cv-03335, Dkt. 65, at 10 (N.D. Ill. Apr. 8, 2019) (quoting *Cadiz*, 2007 WL 4293976, at *11). Most objectionable, the City's proposed consent "attempts to circumvent the public policy goals of *Monell* claims by insulating the City from litigating and accepting responsibility if their practices and policies result in constitutional injuries." *Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *3 n.1 (N.D. Ill. Dec. 6, 2013). The City should not be allowed to willfully sidestep accountability for unconstitutional practices. *See Estate of McIntosh v. City of Chi.*, No. 15 C 1920, 2015 WL 5164080, at *9 (N.D. Ill. Sep. 2, 2015) (bifurcation would "effectively deprive[] [plaintiffs] of [their] right and ability to be the 'master of [their] complaint and proof,' and to proceed, as is guaranteed by the Supreme Court and 42 U.S.C. § 1983, on [their] independent *Monell* claim against the City" (quoting and citing *Holmes v. Group, Inc. v. Vornado Air Circulations Sys, Inc.*, 535 U.S. 826, 831 (2002); *Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000))).

15

independently support a judgment in favor of Plaintiffs, even if the court of appeals were to reverse on individual liability, for example. Ultimately, the City's argument cannot be countenanced because it amounts to an assertion that whenever a plaintiff can recover compensatory damages from an individual Defendant (or that Defendant's indemnitor), the potential for municipal liability should be erased. *See also Deleon-Reyes*, Transcript of Proceedings Before the Honorable Andrea R. Wood, Dkt. 173, Exhibit J, at 14:2-7 ("there is . . . inherent value to [an actual judgment] as opposed to being able to treat that party as just an indemnitor"). *Monell* decided that municipalities are liable only for policies; it did not decide they should never be liable at all.

## CONCLUSION

Defendants' joint motion to bifurcate is an attempt to avoid discovery and trial on the City's policies and practices altogether. Defendants have not provided a sufficient justification for bifurcation of this case. For all the foregoing reasons, this Court should deny Defendants' motion.

Respectfully submitted,

/s/ Zachary J. Hofeld

## CERTIFICATE OF SERVICE

I, Zachary J. Hofeld, an attorney, hereby certify that on December 28, 2022, I filed the foregoing **Plaintiffs' Response In Opposition to Defendants' Joint Motion to Bifurcate Monell Claims** using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Zachary J. Hofeld
*One of Plaintiffs' Attorneys*

Al Hofeld, Jr.
Zachary J. Hofeld
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle St., Suite 3120
Chicago, IL 60602
(773) 241-5844
zach@alhofeldlaw.com

16