**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JULISSA GREEN, on behalf of her minor child, DANASHA MCCORY, and as next friend of her minor grandchild, BAYLIE BELL, | ) ) ) | Case No. 22-CV-02918 |
| | ) | Hon. Andrea R. Wood, |
| Plaintiffs, | ) | District Judge |
| | ) | |
| v. | ) | Hon. Heather K. McShain, |
| | ) | Magistrate Judge |
| THE CITY OF CHICAGO, *et al.* | ) | |
| | ) | Jury Trial  Demanded |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO BIFURCATE *MONELL* CLAIMS**

# EXHIBIT I

1

```
1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
2                           EASTERN DIVISION

3   EBONY TATE, for herself and on  )
    behalf of her minor children,   )
4   E'MONIE BOOTH, LA'NIYA BOOTH,   )   Case No. 18-cv-07439
    LEGEND BOOTH and LAKAI'YA BOOTH; )
5   and CYNTHIA EASON,              )
                                    )
6               Plaintiffs,         )
                                    )
7     v.                            )
                                    )
8   THE CITY OF CHICAGO, et al.,    )   Chicago, Illinois
                                    )   May 28, 2021
9               Defendants.         )   10:24 a.m.

10    TRANSCRIPT OF PROCEEDINGS - TELEPHONIC PRETRIAL CONFERENCE
                BEFORE THE HONORABLE JEFFREY T. GILBERT
11
    APPEARED TELEPHONICALLY:
12
    For the Plaintiffs:       LAW OFFICES OF AL HOFELD, JR., LLC
13                            BY:  MR. AL HOFELD, JR.
                              30 North LaSalle Street
14                            Suite 3120
                              Chicago, Illinois  60602
15
    For the Defendant         CITY OF CHICAGO
16  City of Chicago:          DEPARTMENT OF LAW
                              BY:  MS. MARION CLAIRE MOORE
17                                 MR. KYLE A. ROCKERSHOUSEN
                                   MS. JOI KAMPER
18                            30 North LaSalle Street
                              Suite 900
19                            Chicago, Illinois  60602

20  For the Individual        QUERREY & HARROW, LTD.
    Defendant Officers:       BY:  MR. LAWRENCE S. KOWALCZYK
21                            120 North LaSalle Street
                              Suite 2600
22                            Chicago, Illinois  60602

23

24

25
```

Nancy C. LaBella, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1728
Chicago, Illinois  60604
(312) 435-6890
NLaBella.ilnd@gmail.com

2

1      (Proceedings held remotely, via telephone conference:)

2           THE CLERK:  18 cv 7439, Tate, et al. v. City of

3  Chicago, et al.

4           THE COURT:  Okay.  Good morning, everybody.  We're

5  here on the City's motion for a protective order on the

6  Rule 30(b)(6) deposition.  We're on the telephone, but we also

7  have a court reporter so we can have a transcript.

8           Tell me who we have for the plaintiffs and for the

9  defense.

10          MR. HOFELD:  Good morning, your Honor.  It's Al

11  Hofeld, Jr. for the plaintiffs.

12          THE COURT:  Good morning.

13     (Brief pause.)

14          THE COURT:  I guess that's it for the plaintiffs.

15          Defense lineup?

16          MS. MOORE:  For the City -- we'll go first -- Marion

17  Moore.

18          MR. ROCKERSHOUSEN:  Kyle Rockershousen.

19          MS. KAMPER:  Joi Kamper.

20     (Brief pause.)

21          THE COURT:  Who else?  Anybody else?  It's the City's

22  motion, so maybe it's just you guys.

23          MR. KOWALCZYK:  And for the individual defendant

24  officers, Larry Kowalczyk.  Good morning, your Honor.

25          THE COURT:  Okay.  Anybody else on the defense side?

1      (Brief pause.)

2           THE COURT:  Okay.  I got Ms. Moore's appearance, but

3      I'm not sure that our court reporter heard the other two

4      lawyers.  Could you give those to me again?

5           MR. ROCKERSHOUSEN:  Kyle Rockershousen.

6           MS. KAMPER:  Joi Kamper.

7           THE COURT:  Okay.  Before anybody speaks, as we go

8      through the hearing, just say your name before you speak.  If

9      there's a woman speaking on one side, a woman's voice, a male

10     on the other, maybe you don't have to do that.  I don't know

11     who is arguing this for the City, so -- but I want the court

12     reporter to know who is speaking so she can associate the

13     pearls that you say with the name and your client on the

14     record.

15          Let me tell you why we're here.  We're here because

16     the motion has been pending for a while, number one, and I

17     want to get it done.  Number two, I've read all the briefs.

18     I've read the 30(b)(6) notice.  There's some things that I'm

19     not clear on.  So it would have been -- it's easier to go

20     through all the topics one by one this way and rule orally on

21     the record rather than a -- I just find written opinions on

22     discovery issues like this -- 30(b)(6) topics -- are very

23     tedious and very hard to say what you want to say.  It's

24     easier to say it in this context.  And then if anybody wants

25     to appeal, you can have the transcript written and I think it

4

1    will be a clearer record for appeal.  Okay.

2          So my intent here is to go through the topics for the

3    deposition and at the end of the day get you a -- have you in

4    a position that a deposition or depositions could proceed and

5    you can finish with this phase of the case, okay.

6          And I'm going to go through each topic individually.

7    I ask you the questions I need to ask.  I don't need a lot of

8    repetition of what's in the brief unless you think I'm missing

9    something.

10         Who is going to be arguing for the City now?

11         MS. MOORE:  Your Honor, this is Marion Moore.  It

12    will primarily be me, but Mr. Rockershousen and Ms. Kamper may

13    jump in, depending.

14         THE COURT:  Okay.  So I think it would be okay if you

15    don't have to say your name every time and Mr. Hofeld doesn't

16    have to say his name every time.  But if somebody other than

17    Ms. Moore for the City and Mr. Hofeld for the plaintiffs want

18    to be on the record, just let our court reporter know so we

19    have a very clear record.

20         Okay.  Here's my big-picture view here:  I'm going to

21    go through each of these.  I'm going to sustain some of the

22    City's objections and grant its protective order with respect

23    to some; and some I'm overruling and, therefore, I'm going to

24    deny the motion for a protective order over there.

25         My 10,000-foot view here is that the City is largely

1  asking me -- or in many instances is asking me to get down too

2  far into the weeds and micromanage the discovery process here.

3  So objections, for example, to cumulative are generally going

4  to be overruled because I don't have a clear enough vision of

5  what questions have been asked in the many depositions that

6  have been taken and whether it's really cumulative or whether

7  there's some overlap but not a tremendous amount of overlap.

8  So cumulative objections generally are not going to do it for

9  me.

10       And, similarly, overbreadth.  These topics are -- you

11 know, they're, in some cases, maddeningly narrow, I guess I

12 could say.  But maybe that's really not the term.  They're

13 pretty narrow.  There's a zillion of them and with subparts.

14 So as Mr. Hofeld has said, the topic is really the question he

15 wants to ask and so I'm not sure it's overbroad.  I think the

16 City thinks it's overkill and enough is enough.  But,

17 unfortunately, we're in discovery here; and we're going to

18 have to get stuff done so we can close this out and move to

19 the next phase of your case, whether it's experts or summary

20 judgment or settlement or trial, whatever.

21       I feel similarly about defendants' objections that --

22 with respect to some of these topics -- the City would rather

23 respond in writing to topics that plaintiffs may want oral

24 testimony for use at trial on.

25       Generally on this, I'm going to go with the

6

1  plaintiffs.  I'm not going to say the City can respond in

2  writing.  If plaintiffs are entitled to the information

3  because it's relevant and proportional to the needs of the

4  case, then my view is they're entitled to have a live witness

5  over defendants' offer of a written answer.  And that's the

6  case even against these overbreadth, cumulative objections and

7  the fact that there's two other cases pending with overlapping

8  or similar kind of claims before Judge Kim and Judge Kennelly.

9  I just don't think the offer of a written answer is

10 sufficient.

11        If it's -- this is a Rule 30(b)(6) deposition.  And

12 plaintiff is entitled to get the corporate body's testimony on

13 that topic and for use at trial.  And for many of these places

14 where the City says they want to respond in writing, to me

15 that's just the beginning of a problem because then you'll

16 respond in writing and then plaintiff will say it wasn't

17 complete and if you had said that I would have followed up

18 with a question and now I want you to supplement your response

19 in writing.  And we'll go on and on with respect to that.  And

20 I just don't want to do that.

21        So if it's a question -- if it's topic that's

22 relevant, it's proportional to the needs of the case, I'm not

23 going to treat it as an interrogatory; I'm going to treat it

24 as a request for 30(b)(6) deposition testimony.

25        So under this broad umbrella, let's just go one by

7

1     one here.

2         Topic 1(A).  This is one that I don't really

3     understand.  I don't understand what's going on.  And let me

4     tell you what I don't understand.  There's a 30(b)(6) topic,

5     topic 1(A).  I see the topics that plaintiff wants to --

6     plaintiffs want to cover in that topic.  The City says we're

7     willing to produce a witness.  I take that as -- to be a

8     30(b)(6) witness.  But plaintiff has also served 30(b)(1)

9     notices, and I don't understand what this is all about.

10        My conception of this is, if it's a relevant 30(b)(6)

11    topic, the City produces a witness -- it sounds like the

12    witness is going to be an alderperson -- plaintiff could ask

13    that person name, rank and serial number, you know, background

14    questions that would be relevant to listening to the 30(b)(6)

15    testimony.

16        I'm not sure what kind of 30(b)(1) testimony,

17    Mr. Hofeld, you're asking for.  I mean, conceivably you've got

18    an alderman sitting in the seat as a 30(b)(6) designee; and

19    now you want to ask him about everything he knows about police

20    cases and what does he know about this case or -- I don't

21    think that's fair or what we're talking about here.

22        So I really don't know what the dispute is, aside

23    from topic 1(A)(iii), which is the COPA ordinance issue, which

24    I can address directly.  But I need to understand better

25    what's going on.  Maybe I can ask you, Ms. Moore, first.

8

1          Aside from topic 1(A)(iii) about the COPA ordinance,

2    which we can talk about separately, is the City's position

3    that you will produce a sitting alderman to provide corporate-

4    level or entity-level testimony about these topics?  I think

5    the answer to that is yes.  And what is it that you are trying

6    to limit by the protective order?

7          MS. MOORE:  So, yes, the answer is yes.  We are

8    producing a 30(b)(6) witness for this topic, and I believe it

9    is going to be an alderman.

10          The purpose of this is essentially to limit the time

11    and scope of the deposition.  As we mentioned in the motion,

12    the 30(b)(6) deps have been going all day, largely due to the

13    30(b)(1)-tied questioning -- well, not tied -- you know, the

14    questioning outside of the 30(b)(6) notice, which we've

15    allowed to go forward.

16          But for the alderman, this person is being

17    designated, you know, for this limited purpose of testifying

18    on these topics.  And, you know, an alderman is very busy and

19    should not have to -- for all the reasons we said in the

20    motion -- should not have to sit for an all-day deposition on

21    items that are only potentially tangentially related to the

22    issues at hand here.

23          THE COURT:  Okay.  I hear you.  I don't necessarily

24    disagree with you.  We haven't taken an alderman's deposition

25    in the case yet, correct?

9

1          MS. MOORE:  Correct.

2          THE COURT:  But what you're talking about is other

3     30(b)(6) depositions of other City folks that have taken all

4     day and you feel, largely, because of 30(b)(1) testimony of

5     those people rather than 30(b)(6), right?

6          MS. MOORE:  Correct.

7          THE COURT:  And give me a sense of -- if you can set

8     it up for me with respect to a particular witness and topic --

9     how it develops that there's just a little bit of 30(b)(6)

10    testimony and then a tremendous amount of 30(b)(1).

11         MS. MOORE:  So part of it is going through the

12    person's background, which, I think we mentioned, we're not

13    objecting to here.  I think we -- we're agreeing to two hours

14    of background testimony, what have you.

15         But it's background information; it is personal

16    knowledge about various topics; and, in some cases, it's the

17    personal knowledge of the other 30(b)(6) topics.  And it's

18    just this whole -- it's a wide range of questions based on

19    their personal knowledge, personal experience; and it has

20    lasted several hours in the majority of cases.

21         THE COURT:  And who are these people?  Are they

22    police officers?  Are they employed by the CPD?  Are they City

23    employees that you're talking about?  Because I -- it floors

24    me to think that, for a 30(b)(6) designee, there would be two

25    hours of background testimony.  That floors me, I have to say.

10

1    I don't know why that would be necessary.  And I don't know

2    why these depositions would be an all-day deposition on a

3    30(b)(6) topic.  And I'm having trouble understanding -- and

4    I'll give Mr. Hofeld a chance here.  And it's probably one of

5    the longer arguments we'll have on a particular topic because

6    the other ones I think I understand better.  But he'll have to

7    tell me why -- what the 30(b)(1) is.

8          But you're talking about police officers or -- and

9    you've attached -- I've seen several transcripts.  I haven't

10   digested each and every transcript.  And I, you know -- and I

11   can see maybe if there's a police officer who is a supervisor

12   or something like that and they've been designated on a

13   particular topic, that person might have some 30(b)(1)

14   knowledge.

15         But I am not inclined to allow 30(b)(6) testimony to

16   be hijacked as a 30(b)(1) dep.  The 30(b)(1) dep, there has to

17   be a reason to designate that person -- to depose that person

18   ahead of time as a 30(b)(1) and not to doing a fishing

19   expedition as to what personal knowledge they have, I think,

20   just because they're there as a 30(b)(6) witness.  But

21   Mr. Hofeld might argue against that.

22         But can you -- in other words, I don't know even know

23   what the question is there, Ms. Moore.  Is --

24         MS. MOORE:  I think I know what you're getting at.

25   And it is -- so, some of the other deps that have been longer

11

1  have been the more high-ranking police officials or people

2  with positions in the police department to answer questions.

3  And, you know, it's kind of what you said, that some of them

4  do have some personal knowledge; and it's why we allowed the

5  deps to go forward.  You know what I mean?

6         And so this is a little different because an alderman

7  doesn't have the personal knowledge that, for instance, Matt

8  Cline, who runs the search warrant training and has for

9  several years, he does have some personal knowledge and, you

10 know, it's admittedly relevant.  Whereas, an alderman, that's

11 different.

12        THE COURT:  I got it.  I got it, yes.  And so the way

13 that you're proposing to deal with that is to say, look, we'll

14 give you two hours for what you're claiming is 30(b)(1) and

15 within that, it should be mostly -- it should be background

16 and any personal knowledge the guy has that could be relevant

17 and proportional to the needs of the case.  But you're trying

18 to cabin that within a time period and saying, after that,

19 you've got to do your 30(b)(6).  So you're thinking maybe

20 you've got a three-hour dep or a three-and-a-half-hour dep

21 total, right?  Is that the thinking on the limiting of the

22 30(b)(1)?

23        MS. MOORE:  Correct, yes.

24        THE COURT:  Okay.  So, Mr. Hofeld -- you still there?

25        MR. HOFELD:  Yes, I'm here, your Honor.  Thank you.

12

1      THE COURT:  I know you're there.  I'm just kidding.

2  A little Friday levity here.

3      Anyway, so I -- maybe it's just short, because maybe

4  I would agree -- I think I understand what the City is saying.

5  I would probably agree with them that the 30(b)- -- any

6  30(b)- -- you know, I'm not crazy, I will tell you, about the

7  tactics/strategy of slapping a 30(b)(1) notice, which is just

8  your general fact witness notice, on a 30(b)(6) deposition to

9  say now I can just have free rein here.  I don't like that.  A

10  30(b)(6) dep is a 30(b)(6) dep.  They don't have to produce an

11  alderman.  They can produce the guy -- the sergeant-at-arms or

12  they could produce the guy who sweeps in the City Council, as

13  long as they prepare him to answer the questions, then he

14  answers the questions.  But -- and that person -- if there was

15  a regular deposition notice, non-30(b)(6) deposition notice on

16  that person, I would question because there's no reason to

17  believe that person has personal knowledge.

18      But what they're proposing here is they'll give you

19  two hours with their designee on topic 1(A), having to do with

20  the Chicago City Council.  And you can do what you want in

21  that two hours.  It really should be limited to background and

22  any personal relevant knowledge the person has, not, you know,

23  whether they have ever been arrested in Indiana on a speeding

24  ticket.  And then you go to your 30(b)(6), and that's it.

25      So, your position on that proposal and why it is not

13

1  sufficient and what you're trying to accomplish here that I

2  may not be understanding?

3          MR. HOFELD:  Sure, Judge.  Thank you.

4          Bottom line, I think that's completely fine.  I don't

5  have any problem with that, Judge.  We had agreed at one point

6  that the 30(b)(1) portions of the remaining 30(b)(6) witness

7  or witnesses would be limited to two hours.  I don't have any

8  problem with that.

9          I think, given what's been said on the record, I

10 should just briefly, in my defense, say that I respectfully

11 think the City is exaggerating when it says that these have

12 been all-day depositions.  That's not true.  The depositions

13 have been maybe four, maybe five hours at the most, some of

14 them.  And they are primarily high-ranking people in the

15 police department.

16         And the 30(b)(1) questions have been focused on what

17 they know about the elements of our Monell claim; what they

18 know about use of force policy; what they know about use of

19 force training; what they know about search policy; what they

20 know about search warrant training.  And that's it.

21         And Matt Cline is a good example.  Matt Cline, he was

22 30(b)- -- designated as a 30(b)(6) for a search warrant

23 policy, but he also has a lot of 30(b)(1) knowledge about

24 search warrant training and so on and so forth.

25         So -- but I think, bottom line, we're in agreement.

14

1   We're happy to limit the 30(b)(1) portion of the designated

2   witness for 1 or 1(A) to two hours.  And that's it.  I mean, I

3   don't think there's any need to go on and on.

4           THE COURT:  I agree.

5           MR. HOFELD:  Okay.

6           THE COURT:  I agree.  I think the City is being

7   overly generous.  Ms. Moore is being overly generous with this

8   two hours.  But since it's their proposal, I'm not going to

9   micromanage it.

10          So I will grant the City's motion for protective

11  order with respect to topic 1(A), to the extent that the City

12  shall produce a 30(b)(6) witness on these topics, and any

13  30(b)(1) testimony as part of that deposition will be limited

14  to two hours.  And that's that.

15          Let's go to topic 1(A)(iii), and the topic is whether

16  the Council passed legislation establishing IPRA and COPA and

17  what the main provisions of the COPA act are.

18          I will tell you all that I'm going to apply a filter

19  here.  There are fact questions that I think 30(b)(6)

20  witnesses should answer.  And then there are opinions and

21  legal questions that I don't think are really appropriate

22  topics for a 30(b)(6) deposition.  They're more kind of what

23  the parties are arguing about on the merits.

24          And that's the way I feel about this one, Mr. Hofeld.

25  So whether the Council passed legislation establishing IPRA

15

1    and COPA, I don't think you need a witness for that.  There's

2    a public document someplace.  There's a public record that

3    either they did or did not pass legislation.

4            And I can understand and am sympathetic to -- as I

5    said in my kind of preliminary remarks -- to your need for a

6    witness for certain things rather than a written answer.  And

7    I'm also sympathetic to your need for a witness rather than

8    saying here's a public document.  But on this particular one,

9    I don't know why you need a witness to say whether or not the

10   Council passed legislation establishing IPRA and COPA and what

11   the main provisions of the COPA act are.  Main provisions is a

12   subjective question.  What we're talking about here is

13   testimony from a corporate/public entity body.  And one

14   person's main provision is another person's subsidiary

15   provision.  I think it's unnecessary.

16           Again, as I said, you had a zillion topics here.

17   Many of them I'm going to let you ask.  But I don't get this

18   one and why you need it and why you can't introduce into

19   evidence something if you need to establish that the Council

20   passed this stuff or, alternatively, I am pretty sure that if

21   you get to trial in front of Judge -- who is the district

22   court here -- Judge Kocoras, I think -- in his pretrial, he's

23   going to say stipulate to some of this stuff; you can read it

24   to the jury.

25           So why do you need a witness on this?

16

```
 1          MR. HOFELD:  Judge, I'm fine.  I accept your
 2   inclination as a ruling.  It's fine.
 3          THE COURT:  Okay.
 4          MR. HOFELD:  Yep.  Done.
 5          THE COURT:  Okay.  Can we go off the record here for
 6   a real quick second so I can do something administratively
 7   with Brenda.
 8      (Discussion off the record.)
 9          THE COURT:  So I'm going to grant the motion with
10   respect to topic 1(A)(iii).
11          That gets us to 1(B).  And the challenges that are
12   made with respect to 1(B), I could say shame on you guys --
13   "guys" generically here, men and women -- because you were
14   really good to reference 9 capital A and then you reference 1
15   small b in the motion.  And I had real trouble figuring out,
16   given that there's a lot of 30(b)(6) depositions floating
17   about, what we're really talking about here.  But I think it's
18   1(B), right, Ms. Moore?
19          MS. MOORE:  It is.  I apologize, your Honor.
20          THE COURT:  It's good.  It's fine.  I figured it out.
21          Okay.  1(B)(i), whether the mayor had authority to
22   propose or order reforms to CPD policy, training, and police
23   accountability systems -- I'm sorry, Nancy -- whether the
24   mayor had authority to propose or order reforms to CPD policy,
25   training, and the police accountability system that
```

17

1    investigated and disciplined officer conduct.

2         I agree with the City's objections to this topic, and

3    I'm inclined to sustain the objection, over what you said in

4    your brief, Mr. Hofeld.  This is in the nature of what I was

5    saying in terms of fact or non-fact opinion/legal.  Whether or

6    not the mayor had authority to do certain things, there's laws

7    on this.  And a City Council member's opinion on this is, I

8    don't think, necessarily admissible or even relevant here.  I

9    think there -- you're going to argue about whether the mayor

10   is responsible for certain things or not.  But I think that's

11   going to be based on the facts that you could develop on that

12   and your legal arguments on that.  I just think this is --

13   this is a question that when you're putting together 30(b)(6)

14   topics, you kind of dictate this or write this down and say,

15   yeah, this would be good to know.  But I'm not going to order

16   them to do it.

17        Your response?

18        MR. HOFELD:  Thanks, Judge.

19        Again, your Honor, I accept your ruling.  I think

20   that I would just give you a response on (B)(ii) because I

21   think that's --

22        THE COURT:  Well, hold on.  Hold on.  Because my

23   ruling -- I'm sorry, Nancy.

24        My ruling on (B)(ii) is different and this --

25        MR. HOFELD:  Okay.

18

1        THE COURT:  -- I guess this probably -- my ruling on

2  (B)(i) is sustained.  My --

3        MR. HOFELD:  Sure.

4        THE COURT:  -- ruling on (B)(ii) is overruled.  And

5  this epitomizes kind of where I am.  That's a fact.  That's a

6  fact, Jack.  And you're entitled to a witness to say whether

7  the mayor proposed any reforms addressing alleged police

8  excessive force against children.  That's a fact.  Did the

9  mayor -- he or she, whatever the administration; I think we're

10  talking about "he" here at this point -- but whether the mayor

11  proposed any reforms addressing alleged police excessive force

12  against children, that's a fact.  That's not a legal issue.

13  That's not an opinion.  It's a fact that they want the

14  entity's -- City's testimony on, and I'm going to overrule

15  that objection.

16        But (B)(i), it's more touchy-feely, and I just don't

17  think that's a proper subject for a 30(b)(6) dep.  So if you

18  want to address (B)(ii), you don't really need to waste the

19  time because I'm going to sustain -- I'm going to overrule

20  that objection, but sustain it as to (i).

21        And on (B)(ii), I can hear from Ms. Moore.

22        MS. MOORE:  Well, I think our position is outlined

23  pretty much in our filings.  It is -- it's publicly available,

24  so I don't think we actually would be producing this -- would

25  likely not be the alderman.  So it would have to be an

19

1   entirely different witness that we would have to prepare --

2   find and prepare for -- to testify about publicly available

3   information.  So it's burdensome.  And I think there's a

4   relevance argument here as well.  So that's pretty much where

5   we stand with it.

6        THE COURT:  Okay.  Well, I'm looking at the argument

7   you made in your brief.  It's page 7 of document 262.  No real

8   relevance argument made there, although you have overall

9   relevance, but I think it potentially could be relevant.  And

10  as not your trial judge, I'm not going to make a call on

11  admissibility here, but it seems to me it's within the realm.

12  And this is precisely why 30(b)(6) exists -- or I would say

13  not precisely -- but this is a perfect 30(b)(6) topic.

14        You're right, some of this information, I'm sure, or

15  all of it, is publicly available from a number of different

16  sources.  They could gather it.  They could put four witnesses

17  on with respect to it.  They could put a bunch of documents on

18  with it.  They could try to get a stipulation on it.  Or they

19  could get a live person, who, as you said, is not an

20  alderperson, but it's the janitor or somebody else who you

21  have prepared to say either yes or no, the mayor proposed

22  reforms addressing alleged police excessive force against

23  children.  And if the answer is yes, then the follow-up

24  question is, what reforms would those be; and that person

25  would be prepared on it.  If the answer is no, then they go on

20

1    to another topic.

2           But it is actually -- it's no more burdensome to me

3    than a 30(b)(6) deposition is generally.  And it is a

4    burdensome process.  There's no question about it.  You have

5    to find somebody, you've got to prepare them, and that person

6    has to testify.  But the framers of the Federal Rules of Civil

7    Procedure said this is a good way to get entity-level

8    testimony from one person as opposed to from six people.  So I

9    hear you.  I read your argument.  I have it in front of me,

10   but I'm going to overrule that objection.

11          Next one is 1(D), the consent decree.  And this is --

12   and, here, I agree with the City, Mr. Hofeld.  My inclination

13   is to sustain their motion on this respect:  You can look at

14   who signed the consent decree.  The use of the words

15   "ultimately authorized" the City to do this, I understand from

16   your brief you want to get behind who signed it and to

17   authorization and all the rest.  I don't think that's the

18   purpose of a 30(b)(6) deposition.  And I'm not sure it's

19   relevant at all, frankly, to -- you might be curious.  You

20   might want to spin something out of this.  But some City

21   officials signed the consent decree.  It's a public document.

22   You've got it.  This is one of those things that I don't think

23   you need live testimony on.

24          Your response?

25          MR. HOFELD:  Sure, Judge.  Thank you.

21

1          So, Judge, my thought here was just that we know that

2    the mayor and the superintendent signed the consent decree,

3    you know, which is the biggest -- supposed to be the biggest

4    training -- excuse me -- the biggest change -- sea change, you

5    know, in CPD policy and training.  And not just CPD, but the

6    police accountability system, et cetera.

7          It's not clear whether the mayor signed as a final

8    policymaker or as -- you know, as a delegate of final -- final

9    authority -- a delegate of final authority.

10          In negotiations with the City over this, we did ask

11    for, you know, whatever document or whatever statute

12    authorized the mayor to sign the consent decree on behalf of

13    the entire city.  We didn't get anything.  We didn't get any

14    information.  We didn't get anything authorizing him to sign.

15          So -- I mean, I think because we have the burden of,

16    you know, identifying who the final policymaker was for a

17    document, which we're saying helps prove deliberate

18    indifference because it doesn't contain any changes to force

19    policy and training when it comes to use of force with

20    children.  We're just trying to identify who was acting as the

21    final policymaker here.  Was it the City Council with, you

22    know, authorization -- delegated authorization to the mayor?

23    Or was it, you know -- was it the mayor acting as the chief

24    executive, making policy for the City?

25          THE COURT:  Okay.  I hear you.  I'm still with Judges

22

1    Kim and Kennelly on this.  I looked at their rulings in

2    similar areas involving questions about the consent decree.

3    And I'm still sustaining the objection.

4           I understand what you're saying.  I don't know that

5    that's 30(b)(6) testimony as opposed to something else.  I'm

6    not sure how much it matters since it was -- whether it was

7    signed as a final policymaker or as an executive of the City

8    binding on the City, I'm not sure it's going to matter at

9    trial.

10           If there's a way for you to -- you sought this

11    information, it sounds like, at least in a document or

12    something else, and I'm not sure why you're not getting it.

13    But there's no motion to compel me to force them to provide

14    that particular information.

15           The question before me now is the 30(b)(6) on this

16    topic.  And I just think the consent decree answers the

17    question.  These are squirrely -- I don't mean it

18    derogatorily -- but "ultimately authorized," I'm not exactly

19    sure what that is going to mean in practice; but it's going to

20    cause a lot of, I think, unnecessary wheel-spinning on this

21    particular thing.  So I'm going to sustain -- and I read the

22    briefs on it.  I read your argument on it.  I've heard what

23    you had to say.  I'm going to sustain the objection to 1(D)

24    and grant the motion in that respect.

25           Next -- making huge progress here -- we get to topic

23

1    11.  Hold on for a second.

2        (Brief pause.)

3            THE COURT:  I'm going to overrule the objection, deny

4    the City's motion, order the City to produce a witness on

5    this.

6            I can't tell that this is entirely cumulative from

7    something else based upon what you gave me in the briefs,

8    which, you know, I'm thankful for the fact that you didn't

9    give me every single deposition and every single document and

10   every single everything that this was touched upon.  But I

11   really don't have enough information to say it was cumulative.

12   And even if I did have every piece of information on this, and

13   document, I'm not sure I would necessarily say that it was

14   cumulative because there might be something else or particular

15   witness may have something.  So I don't think I need to go

16   down that rabbit hole.

17           And I'm not going to -- this is one of the ones where

18   the City says they want to respond in writing.  And for the

19   reasons that I stated earlier at the beginning of the hearing,

20   I'm not going to say they can provide this information in

21   writing.  I know the City feels enough is enough; give us a

22   break; this is the third time we're going through some of

23   these things, given the other cases pending.  But I'm not

24   convinced that plaintiff has all the information from other

25   testimony on a cumulative basis.  And I think they're entitled

1    to a witness on these topics.

2          And I will also say that I looked at Judge Kennelly's

3    rulings on what -- before him were topics 14 and 15, which is,

4    I think, ruling No. 4 in his ruling that you referred me to.

5    And this is consistent with that ruling where he did enforce

6    the topics.

7          So I don't know that there's much more to say.  I'm

8    not going to allow you to respond in writing.  And I think I

9    can't really say that it's completely cumulative based on

10   what's in front of me.

11         Ms. Moore?

12         MS. MOORE:  I mean, I guess I would say -- to offer

13   to provide these transcripts to you.  Multiple witnesses have

14   answered almost all of these questions directly.  So maybe we

15   should have been more clear about what we mean by cumulative.

16   And I think we said in the briefing that we asked to answer in

17   writing so that we can point to the deposition transcripts

18   where these questions have already been answered.  I don't

19   know if it's every single one, but it is a large majority of

20   them.  And so we're essentially probably going to have to

21   reproduce a witness who has already testified and already

22   answered these questions to just answer them again.

23         So that's pretty much all I have on that.

24         THE COURT:  I hear you.  I'm not going to look at

25   transcripts.  I'm really not being critical here.  And I

25

1   understand there's a lot of paper in this case and all the

2   other cases you're litigating against Mr. Hofeld with these

3   things, so sometimes there's a tendency to maybe either assume

4   more knowledge by the judge.  But there's three different

5   judges on this.  I don't want -- I'm not going to allow you to

6   resubmit more transcripts to me to convince me.

7           And this is key, that almost all of the questions

8   have been answered, because I don't want to parse through all

9   of them and say, well, parts three and four of this particular

10  sub-question have been answered by this witness; but

11  Mr. Hofeld is going to say, but that doesn't cover the board

12  because I have this other question.

13          I would suggest to you -- because you do work well

14  together, I believe -- Mr. Hofeld, Ms. Moore has a point.  If

15  there are other witnesses in topic 11 who have testified or

16  touched on these topics and they can designate as their

17  30(b)(6) live witness testimony in this case, those witnesses'

18  testimony on that, I don't know why that wouldn't be

19  sufficient for you.  You've taken so many depositions as it is

20  in this case and the other, why do you want to take more.  But

21  I can't, with certainty, say that here I'm not going to order

22  that to happen.  I suppose somebody could come back and say,

23  he didn't take you up on the suggestion and here's all these

24  transcripts and leave it to you to do that.  I don't

25  necessarily want to do that.  But I'm not going to let you

26

1  submit it again on a fully briefed motion because I want to

2  get this motion ruled on and move on.

3       So I hear what you're saying, Ms. Moore.  I don't

4  have enough information to agree with you.  But when you say

5  almost all the questions have been answered, that then -- for

6  sure the ones that haven't been answered, he can ask.  And

7  then how thoroughly were the other ones answered and does he

8  have a right to take it in this case, I don't know.  It's too

9  much brain damage.  And this is -- this is part of your

10  saying, well, I want to respond in writing.  Maybe it wasn't

11  teed up on either side as well as it could have been teed up

12  on this.  But based on what I've seen in the briefs that were

13  submitted, I'm going to overrule the objection and deny the

14  motion on that basis.  If there's more you all can do on

15  that --

16            MS. MOORE:  Your Honor --

17            THE COURT:  Go ahead.

18            MS. MOORE:  I do have one more thing to say on this.

19  And this is not something I've brought up with Mr. Hofeld, so

20  by bringing it up, I don't mean to imply that he would not

21  agree to this.

22       But to the extent -- because I believe we're going to

23  be designating probably somebody who has already testified

24  before on this topic -- who has already given a dep, I should

25  say -- we would ask that it be a limited dep and not a rehash

27

1   of everything that's already been asked.

2            THE COURT:  I'm not going to say that either.  I

3   would hope that it's limited too, based on everything you're

4   telling me.  I can hear from Mr. Hofeld a little bit on this.

5   But I'm looking at the one paragraph at page 8 of your motion

6   that dealt with this, and this is what I read and what I'm

7   prepared on.  And based on this, my ruling is going to be what

8   it is.

9            If you're going to produce somebody who has already

10  testified before and that -- well, I'll stop here.  I'm not

11  going to micromanage it like that, Ms. Moore, right now.  I'm

12  not saying that's an unreasonable suggestion.  I'm just saying

13  in the context of what I read on the briefs submitted, I'm not

14  going to go there.

15           Mr. Hofeld, aren't some of her suggestions reasonable

16  here?

17           MR. HOFELD:  Absolutely.  They're absolutely

18  reasonable.  And, I mean -- and we -- it may be, you know --

19  it may be that some of the questions -- some of the questions

20  were asked of previous witnesses under 30(b)(1), so we may

21  need to ask them under 30(b)(6).  And I don't think -- some of

22  the questions may have been asked before in -- a few of the

23  questions may have been asked before in 30(b)(6) testimony.

24           And I certainly -- I would like to finish discovery

25  in this case.  I do not -- you know, I do not want to prolong

28

1   this.  I want to get the information we need, you know, bind

2   the City under 30(b)(6), and move on.  So I'm not going to --

3   I have no interest or inclination to draw out any of the

4   depositions longer than they need to be drawn out in order for

5   us to get the information we need.

6        So I'm not going to go over terrain that has already

7   been clearly covered.  So it's just going to be a matter of, I

8   guess, looking back at the transcripts and parsing through the

9   subparts of this topic and I guess figuring out, you know, for

10  myself, what we already have and what we don't have.

11       THE COURT:  Yes.  Look, I'm going to -- I strongly

12  suggest that you do exactly that and that you and Ms. Moore

13  talk about how you can do this in an efficient, time-

14  effective, economical way without treading ground that's

15  already been tread.  I realize this is one topic in a large

16  motion for a protective order.  I said that I have a paragraph

17  of the motion devoted to it.  And I'm looking at the reply

18  here, and I have the same thing -- you know, saying the same

19  thing.  We're talking cumulative.

20       So if it's cumulative, don't do it.  And if you can

21  agree to designate certain prior testimony as the testimony in

22  this, do it.  And if there's something that was missed there

23  that is relevant here to this case and that you don't have

24  someplace else, then figure out an efficient way to get that

25  done.

29

1        But based on the papers in front of me, I'm going to

2   deny the motion for this topic, overrule the objection, and

3   order that 30(b)(6) testimony be provided in one way or

4   another as we have just talked about.

5        Topic 13.  My inclination there is also to overrule

6   and deny the motion on that.  Whether the City knew about or

7   availed itself of the Yale program seems to be relevant.  If

8   the answer to that is no, then it's not unduly burdensome.  I

9   think the plaintiffs are entitled to make the rhetorical point

10  that the City didn't avail itself of an available resource.

11  And they're entitled to 30(b)(6) testimony on that topic

12  because that makes it differently than proving a negative.  On

13  the other hand, if the City did avail itself of the program,

14  then it should tell Mr. Hofeld how and when and whatever.

15        I think it's appropriate testimonial evidence in a

16  30(b)(6) topic -- context, rather.  And it's not burdensome or

17  disproportional to the needs of the case, as I understand the

18  case.  The ultimate relevance of the claims or defenses is a

19  question for another day.  Whether this ever comes into

20  evidence, is something that was or wasn't done, is going to be

21  for the trial judge.  But, to me, on a -- for discovery, which

22  is going to be a broader than admissibility inquiry, I think

23  it's relevant and proportional discovery.

24        Ms. Moore?

25        MS. MOORE:  Well, I think the point we were making in

1  our motion is that -- and maybe this could have been more

2  clear -- is that, I mean, there's -- there could be some

3  relevance.  But, you know, this is one program of many.  And

4  in terms of proving a deliberate -- a failure to train claim,

5  even if the City -- if the City did or didn't avail itself of

6  one particular program, that -- that actually is not going to

7  go to proving this claim.  And that's kind of the relevance

8  argument we were making.

9         And then, so, what we were trying to say is that this

10 limited relevance of whether or not the City availed itself to

11 one particular program is -- it's not proportional to hunt

12 down -- to get a witness to answer these questions,

13 considering the evidence that has already been presented about

14 the training as to these issues.

15        THE COURT:  Well, I'm looking at your brief at

16 page 8, and it says -- you make a relevance argument.

17 Mr. Hofeld responds to the relevance argument.  I think at

18 least at the discovery stage, he has the better part of that

19 argument.  Whether he has that better part of the argument at

20 the trial stage is a different question.

21        But I'm convinced at least that he's in the right --

22 this is an area that is allowed for discovery.  The brief says

23 the program concerns -- and this is pretty much what you've

24 said too -- the program concerns mental health professionals

25 who respond immediately to police calls involving child

1  victims or witness violence. You didn't say that. That's a

2  prefatory thing. But then you say: Plaintiffs already have

3  all of the necessary materials, documents, and 30(b)(6)

4  answers regarding whether there was an absence of child-

5  specific policy or training.

6      And what that tells me is that this is an appropriate

7  30(b)(6) topic because materials have previously been produced

8  about this and testimony has been provided about this and --

9  either in this case or the other cases where you're sharing --

10  and plaintiffs could get the answer by accumulating a whole

11  bunch of other stuff.

12      And my view of 30(b)(6) is that they're entitled to

13  ask a witness a question and get the oral testimony about it

14  and get the entity's testimony about that particular topic,

15  rather than referencing the necessary materials, documents,

16  and other 30(b)(6) answers.

17      And I don't know -- when somebody makes a burden

18  argument, they need to tell me more about burden than I've

19  heard here orally or in writing. They have to tell me: We

20  need to talk to 500 people to get their answers because it's

21  not centrally located someplace and it's going to be expensive

22  for me. But I don't even know if the answer to this question

23  is yes or no. I mean, if the answer to the question is -- let

24  me look at topic 13 -- just 13(A): Whether at any time during

25  the Monell period CPD provided officers with any training

32

1    regarding child development -- blah, blah, blah -- whether

2    officers were -- I'm in 11.  Sorry.  That's the wrong -- 13 is

3    the Yale program, right?

4              MR. HOFELD:  Yes, your Honor.

5              THE COURT:  The community policing.

6              The question is:  Whether during the Monell period

7    CPD had heard of or was familiar with CDCP; what was its

8    understanding; whether they received training in it.

9              You know, these are yes or no questions that somebody

10   could be provided.  No, we didn't know about the Yale program.

11   Yes, we knew it and this is what we knew and this is why we

12   decided to either not participate or do it.  These are

13   legitimate questions, I think.

14             Ms. Moore, you were going to say something?

15             MS. MOORE:  Well, yes.  To further explain the

16   burden, I mean, it is -- some of these later ones are yes or

17   no and have, I mean, essentially been answered already.

18             But as for 1(A), whether CPD generally had heard of

19   or was familiar with this, over a six-year period, you know,

20   we are going to have to talk to quite a few people to find out

21   if somebody at CPD had any awareness of this.  And so it is

22   going to be an undertaking that -- I mean, we're going to have

23   to talk to multiple people and get this answer.  And then

24   whoever it is that we designate to testify about this, we're

25   going to have to prepare them on this.  And it is going to be

33

1   a lot of work on our part.

2       So that's the proportionality argument, is this

3   program that has -- in our opinion, as we've explained --

4   limited relevance to the actual legal claims here, we're going

5   to have to go on this fishing expedition to find the answer,

6   even though it is a simple yes or no.

7       THE COURT:  Okay.  Mr. Hofeld, if I sustain the

8   objection with respect to 13(A)(i), "whether during the Monell

9   period CPD had heard of or was familiar with --" because I

10  acknowledge those words are tough "-- with CDCP"; but I let

11  you do all the rest of them, "what was CPD's understanding of

12  the CDCP program and its main purpose," that means they have

13  to find somebody who had that knowledge and what was the

14  understanding.  But that's okay.  That's different than having

15  to ask everybody in the world whether they ever heard of it or

16  were familiar with it.  "Heard of" or "familiar with" are a

17  little bit imprecise.  But if I sustained it on (A)(i), how

18  much are you losing?  Not much, right?

19      MR. HOFELD:  No, that's fine because that's -- well,

20  I guess we may -- we might lose a little because part of

21  this -- part of the relevance is this was a national program

22  that a lot of police departments were participating in.  And a

23  little bit goes to notice.  But, I mean, Judge, in the

24  interest of getting this done, I mean, we can live without

25  it -- certainly live without it and the rest would be fine.

34

1          I don't -- I do -- I would say, just super briefly in

2     response to Ms. Moore, 13 is -- I mean, it's directly

3     relevant.  It's at the heart of our case.  We've never been

4     able to get any information from the City about its

5     knowledge -- any 30(b)(6) information about its knowledge or

6     understanding of this program or whether it participated in

7     any way.  And I think the answer is going to be no to all of

8     this.  And if that's the case, then it's certainly -- you

9     know, there's much less burden.  They may have to talk to a

10    few people, but if the answer is no, they don't have to

11    prepare anybody.  So --

12          THE COURT:  Okay.

13          MR. HOFELD:  -- bottom line, I could absolutely

14    accept what -- your Honor's recommendation.  We could live

15    without (A)(i), as long as we can -- as long as we can proceed

16    on the rest.

17          THE COURT:  Well, whether or not you can accept it or

18    not, that's going to be my ruling.  I think as I look at

19    (A)(i) more closely, the question, "whether anybody at CPD had

20    heard of or was familiar with" is ambiguous; and I think

21    that's a hard question to answer.

22          There are certainly people at CPD who have major

23    responsibility for an area within which this program would

24    have come to light or would be relevant.  But whether the 3rd

25    District commander heard about it at some point and didn't

35

1   tell anybody else at CPD is -- I don't think is relevant or

2   proportional to the needs of the case.  And they shouldn't

3   have to go chase this down.

4        So I'm going to sustain the objection as to topic

5   13(A)(i).  I'm going to overrule it with respect to the other

6   ones.  I know there's burden probably involved in those other

7   ones too, Ms. Moore, but I can't really quantify it.  And it

8   seems to me, as I've looked at those while we're talking about

9   it here, that the burden there was much less because you have

10  to talk to people who would generally be aware of these kinds

11  of programs.  And if the answer is no, then it's an easy

12  answer.

13       And I disagree that it's not relevant.  They can

14  present and prove up their case the way they want, not

15  necessarily the way the City wants.  And if for some reason

16  the plaintiff want to make a big point about the existence of

17  this program in New Haven that was a big deal and the City

18  didn't take advantage of, then so be it.

19       Let me look at these one more time.

20     (Brief pause.)

21       THE COURT:  I'm going to also, Mr. Hofeld -- I'm

22  going to -- let me just parse this then.  It was presented as

23  an all-or-nothing deal.

24       I'm going to grant the City's motion as to (A)(i) and

25  (A)(ii) under 13.  What was the CPD's understanding of the

36

1  program and its main purpose, you know, pretty broad to me

2  too.  And a little bit more along the lines of what the

3  entity's, quote/unquote, opinion was, or understanding.

4       But there's fact questions in (B) here that I think

5  are germane.  Whether Chicago police officers received

6  training in CDCP during the Monell period.  My guess is with

7  these questions, you might be able to understand better what

8  the CPD's understanding was.  So I'm going to overrule it as

9  to (B)(i).

10       (B)(ii), how many officers received training.

11  Totally factual.  Overruled.  What was the nature and content

12  of the training.  Overruled.  When and why was the training

13  discontinued.  Overruled.  If they didn't receive training and

14  whether the City participated in it at all, that's a fact

15  that's -- start and end dates; discoverable; if CPD never

16  participated, why not, that's fine.  Whether CPD ever reviewed

17  the program at any time to evaluate.  That's a fair question.

18  And why did the CPD not -- decide not to participate.

19       Okay.  So I'm striking (A)(i) and (A)(ii) based on

20  further argument by Ms. Moore and considering what,

21  Mr. Hofeld, you're saying.  But I'm going to overrule it and

22  deny the motion as to the rest.  And I think we're done on

23  that topic.  I don't know that there's anything more to say.

24       Next topic, 21 -- because 14, 15, and 16 have been

25  mooted, so now we're really cooking with gas here.

1          Topic 21.

2     (Brief pause.)

3          THE COURT:  I'm going to take a five-minute break

4   here, okay.  So everybody else please take a five-minute break

5   here.  It's 11:22.  We'll come -- maybe an eight-minute break.

6   We'll come back at 11:30 and we'll finish this up, certainly

7   before noon.  Okay.

8          MR. HOFELD:  Thank you, your Honor.

9          MS. MOORE:  Thank you, your Honor.

10    (Recess taken.)

11         THE COURT:  All right.  We're all back.

12         21.  These are the CPD SWAT team questions.  And the

13  City's objection is, number one, this doesn't closely track

14  paragraph 180 of plaintiffs' third amended complaint, which

15  talked about SWAT officers.  I don't know that it has to.

16         These questions, I think, in 21(A) and (B) are

17  related to the allegations in the amended complaint.  I don't

18  know that the 30(b)(6) notice has to track those questions

19  exactly.  So I think, as plaintiff says, these questions are

20  central to its case; and I think that that's right.

21         I can't tell completely from the papers whether this

22  is completely cumulative of other testimony or not and if it

23  is cumulative how much so.  I know the City points to

24  Officer -- or Sergeant Hroma's -- that's H-r-o-m-a --

25  testimony.  That was 30(b)(1) testimony not 30(b)(6).  And you

1    point to particular pages of his deposition.  And this is kind

2    of the problem with this.  I'm having trouble reading the

3    pages of the deposition.

4          Hello.  Are you still there?

5          MS. MOORE:  Yes.

6          MR. HOFELD:  Yes, your Honor.

7          THE COURT:  I had some ding on my system here.

8          I'm looking at the pages of the deposition, and I

9    can't tie these out to all these questions.

10         For example, Ms. Moore, you direct me to pages -- a

11    bunch of pages, including 48 to 52 of Hroma's deposition.  So

12    obviously those pages start with something that has -- is not

13    relevant.  But there are questions in there -- like at

14    page 49 -- 30(b)(1) testimony:  During the Monell period, at

15    any time did CPD have any directive of any kind on when it's

16    reasonable or not reasonable for officers to point firearms at

17    children?  And he said:  The policy covers everyone.  And

18    what -- Mr. Hofeld then went through and he was really trying

19    to isolate that the policy doesn't specifically cover

20    children.  And I think that the testimony was it doesn't, but

21    it covers everyone, including children.  So you're going to

22    have to argue about that at trial.

23         So which question at pages just 48-52 are the exact

24    questions that he's got in his dep notice here?

25         MS. MOORE:  I don't think you were -- that doesn't

39

1  look like 48 to 52 of Sergeant Hroma's deposition that you

2  just read.

3         THE COURT:  I'm on page 51 of the CM/ECF document,

4  which is 262-3.  And it's 49 and 50 of the actual deposition.

5         I guess I -- when I look at this, I have trouble --

6  you know, I don't see the precise questions in the 30(b)(6)

7  being asked and answered in the 30(b)(1).  I don't know how

8  much I should be -- this is the problem with cumulative,

9  right?  Is the one Q and A in a 30(b)(1) deposition sufficient

10 to get the 30(b)(6) testimony?  I don't know how I could

11 figure that out.

12        But is there parts of Hroma's deposition, for

13 example, that you want to say:  On page X, he asked this

14 question and he got this answer and that's exactly the same

15 question in 21, paren, little something i?  Or did you just

16 want me to read all these pages and get the sense that a

17 witness has already testified about a lot of this stuff in

18 different ways or very similar to what the questions are?

19        MS. MOORE:  Essentially that it's very similar, if

20 not exactly.

21        So just to read page 48 of Sergeant Hroma's dep, he's

22 talking about the planning process, the final approval of the

23 plan, and then -- so --

24        THE COURT:  Is this 48?  I'm sorry.  I'm sorry.  Is

25 this 48 of the actual transcript or of the CM/ECF page on top

40

1   and what you filed as 262-3?

2           MS. MOORE:  I'm looking at the page of the actual

3   transcript.

4           THE COURT:  Okay.

5           MS. MOORE:  Page 48.

6           THE COURT:  Does that page begin with, on line 1:

7           "Answer:  Right, because we already have."

8           Is that what page you're looking at?

9           MS. MOORE:  No.  It's -- line 1 says:

10          "Kinds of decisions that you have to make if you're

11  in charge of a mission like that so --"

12          And then the question:

13          "Is it fair to say that you planned that mission as

14  well?

15          And then:

16          "Answer:  So I'm part of the planning process, and I

17  would have the final approval on the plan."

18          THE COURT:  Okay.  Hold on.  I may be looking at the

19  wrong dep.

20          Yes, I am.  So what page of -- can you tell me --

21  maybe you can't -- tell me the page of the CM/ECF filing that

22  you're referring to?  Let me make sure that I'm not missing

23  something here.

24      (Brief pause.)

25          MS. MOORE:  I can pull it up, but I will have --

41

1          THE COURT:  I'm going to go to the -- hold on.  I'll

2   go to the CM/ECF because I have Exhibit D running together.  I

3   don't know whether this is even going to be helpful or not.

4   Hold on.

5       (Brief pause.)

6          THE COURT:  Okay.  I have Exhibit D, which is Hroma.

7   Okay.  And now I'm going to attempt to find page 48.

8          MR. ROCKERSHOUSEN:  Your Honor, this is Kyle

9   Rockershousen.

10          It's ECF page 50 of 262-4.

11          THE COURT:  Okay.

12      (Brief pause.)

13          THE COURT:  Okay.  I'm there.

14          Okay.  Go ahead, Ms. Moore.

15          MS. MOORE:  So reading this testimony and the

16   testimony on the other pages of this deposition, he gives

17   pretty specific answers to these questions.  And so that -- if

18   it would be -- you know, I understand your Honor's prepared to

19   rule today.  But if it would be easier for us to line up the

20   testimony even more -- you know, for instance, saying, well,

21   you know, 21(a)(i) is answered right here, I think we could do

22   that.  And, I mean, that's essentially what we were proposing

23   to do in lieu of producing a witness, would be to point out

24   exactly where Sergeant Hroma answered these specific

25   questions.

42

1        THE COURT: Well, as you see with the difficulty

2    we're having here, it's a difficult process there. If you

3    wanted -- the argument was made, "all these questions are

4    answered in Hroma deposition," a bunch of cites.

5        I'm not convinced that that's true. And I'm not

6    convinced that plaintiff needs to be limited to that testimony

7    of a 30(b)(1) witness. I get that Hroma talked generally in

8    these areas and may have answered some of these questions as a

9    30(b)(1) witness. But I'm not sure that I'm -- strike that.

10        I'm not convinced that he covered the field that

11    plaintiffs want to cover with these topics in a 30(b)(6) dep

12    and that they should be precluded on a cumulative or

13    burdensome basis from taking the deposition of somebody or

14    somebodies who could provide the 30(b)(6) testimony here.

15        This doesn't -- on the theory that Mr. Hofeld doesn't

16    want to do unnecessary work, which I think is probably true of

17    every lawyer in this case, if there are parts of his testimony

18    that answer all the questions that they've got here, most of

19    the questions they've got here, it doesn't prevent you from

20    giving this information to Mr. Hofeld and saying it. But it

21    may not be a great exercise, right, because even if this guy

22    provided some testimony on these topics, they're entitled to

23    the City's testimony, which they don't have yet. And my guess

24    is you might convince him this topic was answered, but I still

25    have other questions on that one and this one wasn't answered

43

1    so he's still going to need a deposition from somebody.  But

2    maybe I'm wrong.  Maybe you can cut down the deposition

3    substantially.

4           But based on what I'm seeing, including now, I can't

5    say that these are so similar that they should be prevented

6    from taking a 30(b)(6) witness on the topics in 21, on

7    subjects that are pretty central to their case.  And the

8    questions look pretty decent.  So I'm going to overrule and

9    deny the motion on that basis here.  I think at the end of the

10   day, they're entitled to a 30(b)(6) witness on these pretty

11   important questions.

12          Last topic is 22, and there's a bunch of iterations

13   of it.

14          22(A)(iv) --

15          MR. HOFELD:  Your Honor, just to be clear.  I just

16   want to make sure we covered the entire topic 21.  I wasn't

17   sure if you were ruling on the entire topic 21 or just 21(A)

18   and (B), just so there's clarity on the record.

19          THE COURT:  Well, hold on.  Let me go to the --

20          MR. HOFELD:  Because we started out talking about (A)

21   and (B) and then --

22          THE COURT:  Yes.  Let me go to the brief.

23          No, I'm really talking about entirety.  The City's

24   motion at page 11, quote:  The City requests that the Court

25   excuse the City from answering topic 21 in its entirety.

44

1   Because they want you to introduce into evidence whatever

2   written documents exist and Hroma's testimony as a 30(b)(1).

3   And I'm overruling that in its entirety.

4           Is that clear, Mr. Hofeld?

5           MR. HOFELD:  Yes, your Honor.  Thank you.

6           THE COURT:  22.  And everybody has broken -- you did

7   break these up.

8           So the first one is 22(A)(iv).  The City says the

9   plaintiff has waived this by failing to respond to it.  I

10  don't see a response in plaintiffs' brief.  Maybe it's because

11  you really don't need this, which is fine.  But I think what's

12  good for the goose is good for the gander here.  I've

13  denied -- or overruled some of the City's objections on the

14  ground that they didn't put it all together.  And I don't see

15  any response to this in your brief.

16          Is there a response to it?

17          MR. HOFELD:  You said 22(A)(iv), your Honor?

18          THE COURT:  Yes.

19          MR. HOFELD:  Yeah, I don't think there is a response

20  to this particular subtopic.  There was just a lot to cover in

21  a brief.

22          THE COURT:  Yes.

23          MR. HOFELD:  But --

24          THE COURT:  Well, you're not shy about asking --

25          MR. HOFELD:  -- I --

45

1        THE COURT:  You're never shy about asking for more

2   pages, I say with a smile.

3        I'm going to sustain it.  I don't think you responded

4   to it.  I don't know that it's crucial, and I don't know that

5   it's crucial for a 30(b)(6).  And you can probably get this

6   some other way.

7        MR. HOFELD:  Okay.

8        THE COURT:  So I'm going to sustain the objection.

9        I'm going to 22(D)(ii) and (iii).

10       Let me make sure I'm looking at the right ones.

11    (Brief pause.)

12       THE COURT:  Well, first, let me address 22(D)(iii).

13   I'm going to sustain the motion, grant it on that basis.  To

14   me this is, again, what we talked about before.  It's a legal

15   question.  There's a document, there's a controlling document,

16   there's something else.  Somebody's personal testimony about

17   what they think or not on this particular topic is not

18   30(b)(6) testimony.  It's not a fact, whether IPRA or COPA was

19   authorized to do something pursuant to some statutory or other

20   kind of authority, and that can be --

21    (Brief pause.)

22       THE COURT:  Can you hear me?

23       MR. HOFELD:  Yes.

24       MS. MOORE:  Yes, your Honor.

25       THE COURT:  Okay.  My power just went out, so I'm not

1    sure how you're hearing me.  I hear some drilling in the

2    alley, like power hammers.  So that's not helpful because the

3    lights went out and I need to read what I've got here.  So

4    let's try and get this done pretty quickly.

5           I was going to -- if we go out -- I'm talking to you

6    through my computer.  So if we go out, I'll call back into

7    this line so wait for me.  Okay.  You still there?

8           MR. HOFELD:  Yes, your Honor.

9           MS. MOORE:  Yes, your Honor.

10          THE COURT:  Okay.  I was going to grant the motion on

11   22(D)(iii), but overrule it and deny it on 22(D)(ii).  Again,

12   I think (D)(ii) is fact, factual.  This is practice of an

13   agency.  Did an investigator's initial finding of sustained

14   have to be approved by a supervisor?  I think there's a

15   witness that can testify about that.

16          The "authorized" I think is more slippery.  Do you

17   want to address that, Mr. Hofeld?

18          MR. HOFELD:  (D)(ii), your Honor, I accept your

19   ruling.  I guess the only -- just super briefly -- yeah, I

20   guess the second part of (D)- -- hold on.  Am I looking at

21   (ii) or (iii)?  Bear with me a second.  It's hard to see here.

22          (D)(ii), your Honor, I don't need to make any

23   argument on (D)(ii).

24          THE COURT:  Let me interrupt you then because I have

25   more notes on (D)(iii).  I think it's the way you phrased the

47

1   question.  I mean, if the question was:  Did IPRA or COPA ever

2   open an investigation on its own and, if so, describe two

3   instances in which that happened, that's factual.  The

4   question of whether IPRA or COPA was authorized to open

5   investigations on its own is much more slippery.  Authorized

6   by whom, under what law, how strong was that authorization, et

7   cetera.

8          Hold on.

9      (Brief pause.)

10          THE COURT:  I'm not going to re-write your question

11  there, but you can talk to the City about that.  There's a

12  difference between the question that I asked -- which is a

13  fact; did it ever happen -- versus the question you're asking,

14  which is more slippery on authorization.  That's my reasoning.

15          MR. HOFELD:  Your Honor, the second part of the

16  question does ask for the facts; whether it ever did so.  In

17  other words, whether it ever opened investigations for

18  allegations of excessive force against a child and, if so,

19  describe two specific instances.

20          THE COURT:  Okay.

21          MR. HOFELD:  I certainly agree the first part --

22          THE COURT:  Okay.  Well, I would -- you're right.

23  I --

24          MR. HOFELD:  The first part is the legal, I certainly

25  agree.

48

1        THE COURT: Okay. It's a three-part question. I

2 suppose if I -- I didn't really want to micromanage, but here

3 I will.

4        The first part is sustained. They shouldn't have to

5 testify about that. But the factual questions, whether IPRA

6 or COPA ever opened an investigation on its own and, if so,

7 describe two specific instances of it if those exist, I'm okay

8 with it.

9        Ms. Moore, do you want to fight me on that? And I'm

10 not saying that in a derogatory way.

11        MS. MOORE: Well, I think the "on its own" might be

12 hard to answer, but --

13        THE COURT: Do the best you can with whatever witness

14 you have. Well, maybe not. Hold on. "On its own" is hard to

15 answer. Well, I'm striking "on its own." I'm just saying --

16 oh, it would have to be -- okay. This is why micromanaging is

17 not good.

18        What does "on its own" mean? It means in the absence

19 of a complaint, right?

20        MR. HOFELD: Yes, your Honor.

21        THE COURT: Proactively.

22        MR. HOFELD: Yes.

23        THE COURT: Sua sponte.

24        MR. HOFELD: Yes.

25        THE COURT: So that's what it means. There was no

49

1   complaint; it initiated an investigation without being asked

2   to initiate an investigation.  That's what I understand that

3   to mean, Ms. Moore.

4           MR. ROCKERSHOUSEN:  Your Honor, this is Kyle

5   Rockershousen.

6           If I could just add a burden argument.  You know, we

7   can't have a witness do a search and filter all of COPA's

8   investigations for ones that were opened on its own.  So I'm

9   not even sure how we would go about answering this question

10  without --

11          THE COURT:  Well, I would get away from "on its own"

12  to did -- I mean, the question really -- this is micromanaging

13  it.  What he's really saying the question is, is:  Did IPRA or

14  COPA ever initiate an investigation on its own without being

15  asked to do so in a formal complaint or any other way.

16          But it convinces me that my initial instinct not to

17  micromanage this is appropriate.  And I'm sticking with where

18  I was.  You guys can talk about it more and you can do

19  whatever you want to do.  But I'm sticking where I was in

20  denying the motion as to 22(D)(ii) and granting it as to (iii)

21  because this is the kind of work that should have gone into

22  either drafting it in the first place or negotiating whether

23  this was acceptable or not.  And I'm not going to do it on the

24  fly with you.

25          My ruling will stand on (iii) as to it is more

50

1  slippery there and not only because of the "legal authorized"

2  but also was it "on its own" and what if it wasn't a complaint

3  but somebody called and they started their own investigation;

4  was that initiating it or was that because somebody called.

5  It is not -- and if that's the issue, then I agree with

6  counsel that it's more burdensome.  But that's my ruling on

7  that.

8        22(E)(ii), (iv), and (v).

9        My notes say overrule, deny, answer the questions.

10 Let me look at the questions.

11   (Brief pause.)

12       THE CLERK:  Judge, it's Brenda.  I just want to make

13 sure you're still there.

14       THE COURT:  No, I'm here.  I'm here.

15       THE CLERK:  Okay.  I'm sorry.

16       THE COURT:  Yes, yes, I'm here.

17       THE CLERK:  Thanks.

18       THE COURT:  I'm just rereading the notes.

19   (Brief pause.)

20       THE COURT:  This is on discipline recommendations?

21       MR. HOFELD:  Yes, your Honor.

22       THE COURT:  Okay.  With respect to topic (ii),

23 Ms. Moore, most -- the City's biggest objection here is this

24 is all public knowledge; you can get this someplace else, and

25 it's in the documents already produced.  I think the -- if

51

1   that's true, then the information is relevant because it's

2   already been produced.  The question is how can plaintiff get

3   it.

4         It would strike me, however, that if plaintiff wanted

5   to prove these things up at trial with bunches of documents

6   rather than testimony about this -- well, number one, why

7   isn't he entitled to the testimony about this?  Let's assume

8   that it is in a bunch of documents, but it's not in one place

9   and it's not testified to by somebody who binds the City.

10        MS. MOORE:  Well, I think a lot of these have to be

11   read in the context of the entire motion, which was

12   essentially brought for us to try to streamline things and get

13   this case to where it needs to be, from our perspective, to

14   limit the burden on the City and us attorneys to be tracking

15   all of this information down and finding and preparing a

16   witness to testify about all of this when the information is

17   readily available for plaintiff.

18        There's a lot of case law on 30(b)(6) that when

19   you're assessing the burden, if it can be obtained through a

20   less-invasive method, then -- then it should be.  And that's

21   what we're saying here for a lot of these.  Like, yes, this is

22   a very simple answer for some of these; and we actually say it

23   in the motion, the answer is yes, an officer can challenge it

24   and -- through arbitration and the police board.  Yes, that's

25   the simple answer.  And on its face, that seems like just a

52

1    simple thing for us to do.  But when you take this notice as a

2    whole, it's -- I mean, I think we counted -- it's, like, 88

3    subtopics or something.  And although getting to a deposition

4    and sitting there and saying yes is -- doesn't sound

5    burdensome, when you look at the process, it is.  We have to

6    find a witness, prep a witness, and all of that.  So that's

7    what some of this is.

8           And then as for 22(E)(ii) specifically, whether IPRA

9    or COPA recommended discipline that was not ultimately served

10   and under what scenarios that occurred, like we say in the

11   motion, the answer is yes, that has happened.  And under what

12   scenarios that occurred, that's every single time the police

13   board or an arbitrator overturns a disciplinary record.

14   That's -- that's a lot of times.  And so we have to prep a

15   witness on every single time that's happened, you know -- I

16   mean, it's a simple answer technically; but it requires a lot

17   of work on our end to get there.

18           THE COURT:  Okay.  I hear you.  Let me address two

19   things.

20           Let me address the last point you made, which is on

21   (ii).  I don't interpret this question as every single time to

22   -- do you have to prepare somebody on every single time it

23   occurred.  I think you have to prepare to say exactly what you

24   said or pretty much what you said when you said, here's the

25   answer to the question, yeah, it's occurred and this is when

53

1   it occurs.  I don't interpret this as "and tell me the first

2   time it occurred and second time it occurred and third time it

3   occurred."  That would not be appropriate within this topic.

4   It's a general question and it calls for a general answer.

5         More broadly, I completely understand your global

6   point.  Your global point is, give me a break; this -- enough

7   is enough; we've provided this six ways from Sunday, and now

8   he's asking for it again and there's a lot of other ways we

9   can do it.

10        I get that and I understand it.  But it's a broad

11  argument.  And I -- other than agreeing with you that there's

12  a lot of topics and there's a lot here, I don't have enough to

13  say, this answers this question, this answers this question.

14  And my guess is that the effort to try and do it is probably

15  more than the effort to prep a witness on some of these

16  things.

17        Do I agree with you that these multiple subtopic

18  things -- sometimes capital A and sometimes small A throughout

19  the thing are -- that there's a lot here?  Yes, absolutely.

20  The case covers a long period of time.  Unfortunately, that's

21  what the case is.  But I don't have enough information, and

22  I'm not prepared to say that everything that he's asking --

23  but, therefore, everything he's asking for at this point in

24  discovery, you say, the heck with it, you got all this

25  information, go back.  Because I can't make that ruling.

54

1           I do recognize that by conducting this hearing based

2   on a topic-by-topic basis, it ignores sometimes your broad

3   point, which is, this is overkill, Judge.  However, I don't

4   know how to do this other than on a topic-by-topic basis

5   unless somebody were to convince me, as the movant, that this

6   stuff has been answered 12 times in exactly the way it's being

7   asked and you shouldn't have to do it again.  I get the

8   gestalt of it, that we've provided him much of this

9   information in a lot of different ways.  But I think he's

10  entitled -- if that's the case, he's entitled to ask a

11  30(b)(6) question.  Is it time-consuming --

12      (Brief pause.)

13          THE CLERK:  Your Honor?

14      (Brief pause.)

15          THE CLERK:  Judge, we can't hear you.

16          This is Brenda, I'll send the judge an e-mail or a

17  text right now.

18      (Brief pause.)

19          THE COURT:  All right.  I'm back.  I'm dialing in

20  from my cell phone because one of my law clerks told me you

21  lost me.  I don't think I can get into the -- I can't get into

22  the transcript.  I was really being eloquent there.  Where did

23  you lose me?

24      (Record read.)

25          THE COURT:  Okay.  I remember where I was.  I was

55

1   almost at the end.

2          Is it time-consuming?  I'm sure it is.  And this case

3   has taken up a lot of time.  But I don't have enough

4   information in front of me to say, time is up and nothing

5   should happen because of the volume.  But defending cases like

6   this takes a tremendous amount of time.  Preparing witnesses

7   for 30(b)(6) testimony takes a lot of time.  Are there a lot

8   of topics here?  Yes.  Am I prepared to say the number of

9   topics in and of itself disqualifies plaintiff from going

10  forward?  I'm not.  I'm just not, without more.

11          I do recognize, Ms. Moore, what you say, if the

12  information has been provided in another way, that they

13  shouldn't be able to take the 30(b)(6).  But I don't have

14  enough here to tell me that.

15          And I don't know if this was said on the record

16  before we left, but I imagine that the time and effort to try

17  and convince plaintiff or to convince me that every -- all the

18  relevant information has been previously provided in a way

19  that will be binding on the City as a 30(b)(6) deposition

20  would and in a way that plaintiff can use it at trial, I'm not

21  sure you'll be able to convince me of that.

22          So it might be quicker to prepare a witness.  Maybe

23  one has already been prepared on many of these topic but only

24  needs a little bit more to testify.

25          And, again, if this -- I'm not inviting anything

56

 1    more.  But, Mr. Hofeld, I mean, I agree with what Ms. Moore is

 2    saying; there's been a lot here.  I'm not prepared to say it's

 3    overkill because when I look at the individual topics, I

 4    understand them.  But this is a -- you know, it's a -- there's

 5    a lot here.  And if, for example, they're right that Hroma

 6    answered a bunch of these questions as a 30(b)(1) witness and

 7    they say, I want to designate these pages as his 30(b)(6)

 8    testimony and I don't want you to re-ask those questions to

 9    some other witness, I think that's a reasonable request.  And

10    it's done all the time.

11            The 30(b)(1) testimony is then converted to 30(b)(6)

12    testimony, as you know, in order to avoid having to prep a

13    30(b)(6) witness.  But I'm not going to require you to only

14    take Hroma's 30(b)(1) on most of the topics but not all if

15    there are topics that are material and proportional to the

16    needs of this case.  And based on what I have here, I can't

17    say that's the case right now.

18            And the reason I'm saying I'm not inviting more

19    motions is because I'm not inviting the City to come back and

20    say, you told Hofeld to do this and he didn't and then I have

21    to understand why he didn't do it.  So sometimes it may be

22    easier just to get it done.

23            MR. HOFELD:  Judge, can I say one thing before we

24    move on?

25            THE COURT:  Yes.

57

1          MR. HOFELD:  With respect to 22(E)(ii), (E)(iv), and

2     (E)(v), the reason we're asking -- the reason these are

3     subtopics is because we have not received this information in

4     any other form.  And this information is not available

5     publicly in any form.

6          The only thing that was available publicly was a

7     schematic of the disciplinary system that is -- was several

8     years old.  It predated changes that started to be made in

9     2017 after the DOJ report came out and changes started being

10    made.  So we don't have this information available to us

11    publicly.  And it hasn't been produced in any document that I

12    can think of.  That's the reason why we included it here.  And

13    it's central to our failure-to-discipline claim, which is

14    that, you know, the system takes so long and there's so many

15    twists and turns that, you know, no one is ever disciplined or

16    so much time passes that there's no deterrence.

17         So, anyway, that's all.

18         MS. MOORE:  It's in the collective bargaining

19    agreement.

20         THE COURT:  You're both right.  You're both right.  I

21    mean, I was going to say it.  I was going to say that the

22    right to arbitration and all the rest of this stuff has got to

23    be in the CBA; it's got to be someplace.

24         On the other hand, I take what Mr. Hofeld is saying,

25    as one of the reasons he's asking for these, he would like it

58

1    all in one place. And I'm not going to go crazy on that. But

2    I think you're both right. I think there are certainly places

3    and documents that have been produced or that you could find

4    that answer some of these questions. But I do respect

5    plaintiffs' ability or right to get some of this in testimony

6    for trial.

7         And, two, I haven't been convinced of the undue

8    burden yet. And maybe it is because I've been involved in

9    litigation as a lawyer that, you know, had 22 or 50 topics for

10   30(b)(6) depositions and I understood that, you know -- and I

11   wasn't just able to get them thrown out because there were too

12   many.

13        So there's a purpose for a 30(b)(6), and I'm not -- I

14   haven't been convinced yet that plaintiff is abusing that.

15        But believe me, I understand the City's point of view

16   on this. And I understand also that by going through it topic

17   by topic, we miss the forest for the trees. But I'm not

18   convinced that the forest is disproportional to the needs of

19   the case and are relevant and cumulative.

20        All right. We're on, I think, our last couple here.

21        Topics (G)(i), (ii), (iii), (vi), and (vii). I'm

22   going to rattle off my rulings on this real quick. Topic

23   (G) -- and this is what drives me nuts, Mr. Hofeld, so topic

24   (E) was discipline recommendations and capital D for

25   discipline; and this one is pattern analysis and it's lower

59

1  case P for pattern.  I don't know that --

2         MR. HOFELD:  I apologize, Judge.

3         THE COURT:  I don't know that it drives me nuts, but

4  I say:  Why?  If you're going to capitalize them, do capitals;

5  if you're not, don't.

6         MR. HOFELD:  Right.

7         THE COURT:  But forget about that.  Forget about it.

8         My rulings are as follows here:  Topic (G)(i),

9  objection is sustained.  The motion is granted.  Defined

10 pattern analysis is understood by IPRA/COPA.  Just to state

11 it, it's not a real 30(b)(6) topic.  That's, again, going to

12 be somebody's opinion or an agency's opinion.  I'm not sure

13 how you get that.  Poor 30(b)(6) topic.

14        Topic (ii), sustained.  This is answered by the

15 statutory language.

16     (Brief pause.)

17        THE COURT:  This is, again, an authority kind of

18 thing.  And it's just -- I don't think that's a proper

19 30(b)(6), whether an agency had some type of authority.

20 There's something in writing someplace on that.  And as Judge

21 Kennelly had said, that's where you ought to go for the legal

22 authority.

23        And you can question me on this, Mr. Hofeld.  Let me

24 just get these out.

25        Topic (iii), whether IPRA analyzed patterns of

60

1    alleged misconduct in order to identify -- that's a fact

2    question.  I think they should answer it.  I would deny the

3    motion and overrule that objection.  I think it's a relevant

4    factual question.

5          (vi) and (vii), granted.  Whether the collective

6    bargaining agreement limited the ability to do this, look at

7    the agreement.  If you want somebody's legal opinion on that,

8    hire an expert.  But I don't think opinion testimony like this

9    is appropriate for a 30(b)(6).

10          Similarly -- that was number (vi).  And what

11    provisions -- whether and which provisions of the CBA made it

12    more difficult for IPRA/COPA to identify patterns of

13    misconduct.  That's like a "give me a break."  That is just

14    not a 30(b)(6) question.  I don't think you're entitled to

15    their nuanced, subjective assessment of what's more difficult

16    and what's not.  You can make that argument.

17          So my rulings on these 22(G) topics are:  (i),

18    sustained, bad question; (ii), sustained, answered by the

19    statute; (iii), overruled, it's a relevant fact question; and

20    (vi) and (vii), sustained, I guess on the -- this is really

21    not appropriate for a 30(b)(6); give me a break.

22          I'll hear from both of you on which ones -- where you

23    had your ox gored, and then we'll close the hearing.  And I'll

24    hope I get power back.

25          MR. HOFELD:  I'm sorry, Judge.  You were -- I

61

1  couldn't hear the last part.  It was just a little muted or

2  something.

3       THE COURT:  I'm going to ask you for your immediate

4  motion for reconsideration where you lost here, like we've

5  done before.  And if you don't have it, I'll ask Ms. Moore for

6  hers.  And I'll rule on that, and then we'll close the

7  hearing.  And I'll hope I get some power back.

8       MR. HOFELD:  Thanks, Judge.

9       The 22(G) rulings, I don't think there's anything

10 that I need to say.  I heard the ruling, and I don't need to

11 make any additional argument, Judge.  Thank you.

12      THE COURT:  And the only one here you lost on,

13 Ms. Moore, was number (iii), which I think is a factual

14 question, whether IPRA analyzed patterns of alleged misconduct

15 proactively and not in response to an open CR in order to

16 identify and investigate officers.

17      I mean, I think somebody at IPRA should be able to

18 answer that question factually.

19      MS. MOORE:  Yeah, I don't have any other arguments to

20 make on that.

21      THE COURT:  Okay.

22      And I misstated.  We still have one more, 22(H),

23 capital R, resources.

24      22(H)(ii), I'm going to sustain the objection, grant

25 the motion.  Plaintiff can do the math.

62

1          (H)(v).

2      (Brief pause.)

3          THE COURT:  Why is this relevant, Mr. Hofeld?

4          MR. HOFELD:  Because -- it's relevant because, you

5  know, the DOJ report discusses, you have a large -- you had a

6  large percentage of the staff, especially investigators, who

7  are former -- recently former law enforcement people.  So it

8  just goes to the bias of the agency and, therefore, the

9  failure to investigate.

10          THE COURT:  Okay.  This is going to require them to

11  go through the backgrounds of all their people and figure out

12  the percentage of who was former law enforcement.  I think

13  that is fairly burdensome and not proportional to the needs of

14  the case based on why you articulated why you're asking this

15  question.  It sounds like you have some information on this

16  and you can develop elsewhere, but I think this is built on

17  one aspect of the decree and this is not going to the heart of

18  your case here.  So I'm going to sustain the objection on both

19  of these.

20          MR. HOFELD:  Thank you, your Honor.

21          THE COURT:  And with that, I'm going to close this

22  hearing.  I'm going to enter an order that says, for the

23  reasons discussed on the record, it's granted in part and

24  denied in part.  And I'm here when you need me.  I think this

25  is the last motion right now that I have under advisement in

63

1  your case.  I would love it if you keep it that way.  But I

2  understand sometimes that's not the way of the world.  So I'll

3  see you when I see you.

4          Do we have another status hearing in this case now,

5  Brenda?  Or do we have a status report?  What's going on?

6          THE CLERK:  I'm going to look real quick, Judge.

7          THE COURT:  Maybe the parties know.

8          MR. HOFELD:  I don't -- I can't think of a date for

9  either one.

10         MS. MOORE:  I can't think of one either.  And I will

11 say I do think we have a discovery close date of the end of

12 June.  And just given the amount of witnesses and the other

13 tasks that I know at least the City attorneys on this case

14 need to attend to, I don't know that that's realistic.

15         THE COURT:  Okay.  Well -- and I know this is coming

16 later in the process.  It's been under advisement for a little

17 bit of time.

18         Since I can't get into my -- any electronics here, I

19 would like to set a date for you to provide me an updated

20 status report, picking up where you left off.  And if the

21 parties -- if one or both parties believe an extension of the

22 fact discovery close date is necessary to complete discovery,

23 you'll address it in that report.

24         My sense is, from the other reports, things were

25 really winding down nicely.  There weren't that many other

64

1  fact witnesses that needed to be deposed, other than the

2  Monell 30(b)(6) stuff that we've just dealt with.  And I

3  understand, as you say, given the number of witnesses that

4  will flow from my ruling, you're going to need more time.  But

5  I'm hoping that it's time only for that and not for a

6  tremendous amount of other things.

7          The confidential informant's redact order is in play,

8  but that was ruled on.  And I think that right now is

9  standing.  And there were a couple of other witnesses -- I

10 mean, they're seeking assistant state's attorneys or something

11 like that.  But if discovery is supposed to end at the end of

12 June, how about the middle of June you can give me some type

13 of an updated report and proposal once you have had time to

14 digest this?  Does that sound okay, Ms. Moore?

15         MS. MOORE:  I think that is a good idea, your Honor.

16 Thank you.

17         CLERK:  Your Honor --

18         THE COURT:  Okay.  Mr. Hofeld, you're on board?

19         MR. HOFELD:  On board, your Honor.  Thank you.

20         THE COURT:  Okay.  Mary, what?

21         CLERK:  I was just going to say that per docket

22 No. 300, there's already an updated report due the same day

23 fact discovery closes, June 30th.

24         THE COURT:  Okay.  Well, why don't we be proactive on

25 this a little bit.  I mean, if you guys are okay with it, give

65

1   me the report mid-June -- I don't know -- like June 16th or

2   something like.  Brenda, I think that's during a week.  Just

3   so --

4         THE CLERK:  It is, Judge.

5         THE COURT:  Yes.  Just so you can anticipate stuff.

6   I remember when I set that date, I was hopeful that this

7   ruling would have come earlier than it did, frankly, so that

8   if I did do this ruling, then you would find the witnesses

9   that needed to testify and the 30(b)(6) stuff would be over.

10   But it didn't come as early as I had hoped.  So I was hoping

11   that you would say we're done or we just have a couple more

12   things to do.

13         But let's get another report about June 16th.  That's

14   a couple of weeks out.  Gives you time to think about what you

15   still need to do, integrate these rulings, decide what you're

16   going to do; or if you're going to appeal, it's after any time

17   for appeal.  And then we can get hopefully what is a final

18   date and you'll continue to move this case forward.

19         MR. KOWALCZYK:  Thank you, your Honor.

20         Larry Kowalczyk.

21         We do have the minor -- the minor plaintiffs'

22   depositions set for, I believe, mid-June and the 23rd.  I

23   think all four of them have been set in two different

24   sessions.  So we'll include our progress on that in the status

25   report, along with any other deps that -- as they get

66

1    scheduled up to that point and any requests for an extension.

2         THE COURT:  Okay.  Good.  That's great.  Thanks for

3    that information.  Yeah, you're making good progress.  When we

4    started (audio interruption) months ago to go under the bridge

5    and you're getting to the point of -- I mean, we have an

6    expert discovery schedule after that.  If that has to be

7    addressed, let me know.  And then you'll go through summary

8    judgment and maybe you'll settle the case and maybe you won't.

9    Maybe you'll do that before or after.  Maybe you'll try it and

10   maybe you'll be able to even try it in person in a regular

11   courtroom without having to use four courtrooms for a trial,

12   which is what we're doing now.

13        All right, everybody.  Anything more from plaintiff?

14        No, right?

15        MR. HOFELD:  No.  Thank you, your Honor.  Thanks very

16   much for all your time today.  Just thank you, that's all.

17        THE COURT:  Yes.  And nothing from the defense?

18   Ms. Moore, you could speak for everybody maybe?

19        MS. MOORE:  Nothing from the defense.  And I echo

20   counsel's sentiments.  Thank you for all of your time on this.

21        THE COURT:  You're welcome.  I mean, the more I got

22   into it, I just didn't think a written opinion would be

23   appropriate.  And I think this is an easier way or maybe --

24   not really easier.  It's a better way to do it even though it

25   takes more time.  This did take more time than I thought it

67

1  would, but what else is new.

2          Everybody have a really good holiday weekend.  Think

3  positive, test negative and continue to get us out of where we

4  are.  Okay.

5          MR. HOFELD:  Thank you, your Honor.

6          MS. MOORE:  Thank you, your Honor.

7      (Which were all the proceedings held.)

8                    *    *    *    *    *

9

10 I certify that the foregoing is a correct transcript from the
   record of proceedings, held telephonically, in the
11 above-entitled matter.

12

13 */s/ Nancy C. LaBella*                   *August 2, 2021*
   Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25